JOHN B. DRAKE *et al.*

*v.*

ISAAC C. OGDEN.

*Filed at Ottawa May 16, 1889.*

1. TAXATION AND TAX TITLES—*levy of a tax by a village to pay town officers.* An incorporated village has no power to levy a tax for the payment of the salaries of town officers, and if a village does levy such tax it will be illegal, and will render the judgment in which such tax is included, and a tax sale thereunder, void.

2. SAME—*notice of tax sale and time of redemption—its requisites, under the statute.* The statute expressly requires the notice of a tax sale, which may be served or published, to state when the land was purchased, in whose name taxed, the description of the land, for what year taxed or

specially assessed, and when the time of redemption will expire; and a notice which omits any one of these requirements will be absolutely void.

3. SAME—*notice—whether it may include more than one tract.* It will not vitiate a notice of the tax purchase and when the redemption will expire, that more than one tract or lot may be included in such notice. The statute being silent on this subject, the purchaser or his assignee may exercise his own judgment on the subject.

4. SAME—*service of notice—upon whom—who is an "occupant."* The placing of a few stacks of hay by a person on a tract of land actually occupied by another, and inclosing the stacks by boards to protect them from the rains, there being no agreement to pay rent, the owner and occupant, however, consenting to the placing of the stacks on the land, is not sufficient to put the owner of the hay in the actual possession or occupancy of the land or any part thereof, within the meaning of section 216 of chapter 120 of the Revised Statutes, entitled "Revenue," and a purchaser of the land for taxes is not required to serve a notice of his purchase on such person stacking his hay on the premises.

5. SAME—*tax sale of several tracts—in what order to be made.* The statute requires the collector, on the day specified in the notice for the sale of lands for taxes, to offer for sale, separately and in consecutive order, each tract of land, or town or city lot, on which the taxes, special assessments, interest or costs have not been paid. The collector has no power to disregard this mandate of the statute, and if he does so, a sale can not be sustained.

6. Where the collector, however, in addition to the general list for taxes proper, has special lists in certain towns for delinquent special assessments, he may, in the case of a town where there are two lists, in his discretion, take up either list first and then sell under the other list, and this will not be to disregard the direction of the statute.

7. SAME—*judgment for taxes—how far conclusive.* Section 224 of the Revenue act does not make the judgment against the lands for taxes conclusive as an estoppel that the taxes included therein were legal taxes. It shuts out all objections that might have been urged against the judgment, except in cases of payment, or when the land was not liable to the tax or assessment,—and this embraces illegal taxes.

APPEAL from the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

Mr. H. S. McCARTNEY, for the appellants:

Every person in the actual occupancy or possession of the premises was not served with a notice of the sale.

If any part of the property was occupied, the occupant was entitled to the notice. *Comstock* v. *Beardsley*, 15 Wend. 348; *Lucas* v. *McEnera*, 19 Hun, 14.

In *Bush* v. *Davidson*, 16 Wend. 550, the court decide that a mere tenant at sufferance must be notified. In *Jackson* v. *Estey*, 7 Wend. 151, it was held that an admission that the occupant has no title would not dispense with a notice. *Ellsworth* v. *Low*, 62 Iowa, 178, was a case where land was unfenced timber land, and no buildings upon it, but an employe had been cutting underbrush and felling timber. It was held that this was such a beneficial use as the nature of the lands permitted, and that it was a possession entitling the party to notice.

The notice was bad in containing more than one tract or lot.

The premises were sold out of their order. This will avoid the sale. *Wisner* v. *Chamberlain*, 117 Ill. 579.

Section 224 of the Revenue act makes the tax deed *prima facie* evidence of certain things; and then provides that "any judgment for the sale of real estate for delinquent taxes rendered after the passage of this act, except as otherwise provided in this section, shall estop all parties from raising any objections thereto, or to a tax title based thereon, which existed at or before the rendition of such judgment or decree, and could have been presented as a defense to the application for such judgment in the court wherein the same was rendered; and as to all such questions the judgment itself shall be conclusive evidence of its regularity and validity in all collateral proceedings, except in cases where the tax or special assessments have been paid, or the real estate was not liable to the tax or assessment."

It is well-known law, that if any portion of the taxes for which judgment is rendered is illegal, the sale is void. Cooley on Taxation, 295-297; *McLaughlin* v. *Thompson*, 55 Ill. 249; *Gage* v. *Pumpelly*, 115 U. S. 454.

Messrs. WILSON & MOORE, for the appellee:

The park commissioners were not in the possession of the lots. The law requires service of the notice only on actual occupants who may be found. *Taylor* v. *Wright*, 121 Ill. 455.

It is unnecessary, on this point, to consider the number of persons to whom the notice was addressed, in view of the express decision of this court that the notice need not be addressed to any one. (*Frew* v. *Taylor*, 106 Ill. 159.) The address to individuals is surplusage, and does not affect the notice in any way whatever.

The objection to the notice, then, is, that it contained two lots instead of one. The very extended argument of counsel on this point is perfectly immaterial, in view of the fact that the statute expressly authorizes more than one to be included in a single notice. Rev. Stat. chap. 120, sec. 218.

The statute requiring the lands to be sold in consecutive lists was not disregarded. The lands in each list were sold in their regular order.

The statute of 1879 makes the judgment conclusive of every defense that might have been interposed to the application for judgment, except payment, and the exemption of the property from taxes.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

The premises in controversy were sold for taxes on the first day of September, 1882, and purchased by John Carne, Jr. A deed issued on the tax sale January 29, 1885, and the only question presented by the record is, whether the title to the premises passed by the sale and deed.

The objections urged against the tax title, in the argument, are as follows: First, that every person in actual occupancy or possession of the premises was not served with notice of sale; second, that the notice served and published is not a legal notice; third, that the premises in question were sold

out of their order; fourth, that the judgment under which the premises were sold included illegal charges and costs.

Section 216 of the Revenue law provides, that before "any purchaser at a tax sale shall be entitled to a deed, he shall, among other things, serve or cause to be served a written or printed, or partly written and partly printed, notice of such purchase on every person in actual possession or occupancy of such land, at least three months before the expiration of the time of redemption on such sale, in which notice he shall state when he purchased the land, in whose name taxed, the description of the land he has purchased, for what year taxed or specially assessed, and when the time of redemption will expire."

As a compliance with the above provision of the statute, before the deed issued, an affidavit of Edward W. Cross was filed with the county clerk, as follows: "That he is the agent of John Carne, Jr.; that as such agent, 'deponent, on the 15th day of May, A. D. 1884, being at least three months before the expiration of the time of redemption on the sale mentioned in annexed notice, served a notice, of which the annexed notice is a true copy, on James Doyle, by handing the same to and leaving the same with James Doyle, personally, in said county of Cook. Deponent is acquainted with the land or lots mentioned in said notice, and the person so served was the only person in actual possession or occupancy of the land or lots on the 15th day of May, A. D. 1884.'" On the trial, appellants undertook to prove that the affidavit was not true,—that James Doyle was not the only person in the possession of the premises at the time the notice was served, but on the contrary, the South Park Commissioners were in possession of a part of the premises.

It appears, from the evidence, that in 1873 Daniel H. Horn, who represented Carrie C. Gibbons, gave permission to James Doyle to move on the premises. On December 8, 1873, Doyle accepted a lease of the whole of lots 15 and 16 (the premises

in question), by the terms of which he agreed to pay a rent of $4.50 per month, and under this lease he occupied the premises from that time until the notice was served on him in 1884.

It is not claimed that the South Park Commissioners had any lease of the premises, or any part thereof, or that the commissioners cultivated or occupied any part of the premises; but it is said that the commissioners stacked hay on a portion of the premises, and thus were in the actual occupancy. We have examined the evidence bearing upon this question, and we do not regard it sufficient to establish actual possession or occupancy in the South Park Commissioners. In 1875 a Mr. Berry obtained the consent of Horn, and the tenant, Doyle, to stack hay on a portion of the premises. Hay-stacks were put up each year, and boards put round them to keep the hay from getting wet. These boards around the hay are spoken of in the argument as hay-barns, but there was no such thing as a hay-barn on the premises. No rent was paid for the privilege of stacking hay on the premises, or agreed to be paid. The commissioners did give Horn and Doyle, and perhaps Kelly, hay; but there was no arrangement or agreement that it should be given or accepted as rent. Doyle and his wife looked after the hay, to keep out tramps and to guard against fire, and their cows, in return, ran around the stack and ate some hay, but the hay thus used was not rent, or so understood.

If the building of a stack or two of hay on a tract of land actually occupied by another, and enclosing the stack with boards to protect it from the rains, is an act sufficient to place the owner of the hay in the actual possession or occupancy of the land, within the meaning of the statute, then it might be said that notice should have been served on the commissioners; but we do not think such was the case. Doyle was residing on the premises with his family, and was in the actual occupancy of the whole of both lots, and the fact that the commissioners had hay on the premises gave them no possession or occupancy, within the meaning of the Revenue law. Sup-

pose a farm of one hundred and sixty acres of land is sold for taxes, and when the purchaser goes upon the premises to serve notice on those in actual possession, he finds A residing on the land under a lease for the entire tract. When a notice is served on A the terms of the statute have been observed, and the purchaser concludes that he has done all that the law requires. But it turns out, on one part of the farm there is standing a crib of corn belonging to a tenant who occupied the premises the year before. On another part of the farm is a bin of wheat belonging to a former tenant. On another part is a stack of hay purchased by some person residing in the neighborhood. Are all these persons actual occupants of the premises, and entitled to notice? We think not. To so hold would render the statute absurd; and yet, if notice was required to be given the South Park Commissioners, it would also be required in the cases supposed.

As has been heretofore said, the first part of section 216 of the Revenue law requires the purchaser at a tax sale to serve a notice on every person in actual possession or occupancy of the land, and also on the person in whose name the land was taxed. The last part of the section provides, that if no person is in the actual possession of the land or lot which has been sold for taxes, and the person in whose name the same was taxed can not be found in the county, then such purchaser shall publish such notice in some newspaper printed in such county, which notice shall be inserted three times, etc. As a compliance with this portion of the statute, a notice was published, and it is objected that the notice is invalid, because two tracts of land which had been sold, and separate certificates issued for each tract, were included in the same notice.

The statute, in express terms, requires the notice which may be served or published to state when the land was purchased, in whose name taxed, the description of the land, for what year taxed, and when the time of redemption will expire. If a notice omitted any one of these requirements, it would be ab-

39—128 ILL.

solutely void. But whether one or more tracts of land may be incorporated into the notice, the statute is silent. The statute does not prohibit the purchaser from inserting two or more tracts in one notice, and in the absence of a prohibition, and in view of the fact that the statute is silent in reference to what the notice may contain in this regard, we perceive nothing which will forbid the purchaser from exercising his own judgment on the subject. Upon an examination of section 218, a clear recognition of the right to insert more than one tract in the notice will be found. That section relates to the fee which shall be charged by the publisher of the newspaper for the publication of the notice, and in the last clause it is declared: "The fee for such publication shall not exceed one dollar for each tract or lot contained in such notice." If the legislature had intended, by the enactment of section 216, that a purchaser should not incorporate in his notice more than one tract of land, why was the language just quoted used? Moreover, the insertion of more than one tract in a notice can not mislead those who were entitled to redeem, nor could it injure any one, and hence we do not hesitate to place the construction on the statute that we do.

The next point relied upon is, that the premises in question were sold out of their order. The facts in regard to the manner in which the sale was conducted are contained in a stipulation found in the record, executed by the parties, from which we quote the following: "The tax judgment, sale, redemption and forfeiture record shows that at the time advertised for that purpose the tax sale began with 'List No. 1,' and the property described therein was sold in regular order until property in the town of Lake was reached. Before selling property in the town of Lake for general taxes, sale was made of property in the town of Lake under special assessments, after which the sale proceeded under 'List No. 1,' selling property in the town of Lake for general taxes; after which some intermediate towns were sold for general taxes, there being no special assessments

therein; then, when Hyde Park was reached for general taxes, the sale for delinquent lands therein for special assessments was first made, and when this had been completed, continuing under 'List No. 1,' the sale of Hyde Park property for general taxes was made, including the lots in question."

Section 201 of the Revenue law requires the collector, on the day specified in the notice for the sale of real estate for taxes, "to offer for sale, separately and in consecutive order, each tract of land or town or city lot in the said list, on which the taxes, special assessments, interest or costs have not been paid." The question presented is, whether this provision of the statute was violated in the sale of the premises here involved.

The collector has no power to disregard the language of the statute, which requires a sale of lands in consecutive order. If he does so, a sale could not be sustained. These lands were on a list delinquent for general taxes, and, as we understand the record, that entire list was sold in consecutive order. There was, however, in some of the towns,—for example, Towns of Lake and Hyde Park,—another list, embracing lands upon which judgment had been rendered for special assessments. When these towns were reached, in the progress of the sale, the collector, before selling the list for general taxes, sold the list delinquent for special assessments. We do not think this was a violation of the statute. The collector, in proceeding with the sale in the regular order in which the lands were advertised, when he reached a town where there were two lists, had the discretion to take up either list first which he saw proper. This he did in every town in Cook county, during the progress of the sale. When a town was reached where lands were delinquent for special assessments, that list was first sold, and then he proceeded with the list for general taxes.

The last point relied upon to defeat the sale is, that the tax judgment under which the premises were sold included illegal taxes. The territory of the village of Hyde Park is co-extensive with that of the town of Hyde Park, but the two organizations

are in no manner connected with each other. An assessor and collector are elected each year in the town, but the village of Hyde Park has no such officers. It appears, however, from the evidence, that in the appropriation ordinance of 1881, adopted by the village, the sum of $900 was appropriated for town collector's salary, and $1200 for town assessor's salary. Of course, the village of Hyde Park had no authority to pay the salary of the town officers, and it had no right whatever to levy a tax to raise money for that purpose. The levy, so far as the $2100 is concerned, was illegal. The result was, nineteen cents were added to the taxes on one of the lots, and twenty-seven cents to the taxes on the other lot. These amounts formed a part of the judgment for taxes upon which the premises were sold, and the question arises, whether such illegal taxes rendered the judgment and sale void. It is claimed by appellee that the defect relied upon is cured by section 224 of the Revenue law, as amended in 1879. The section makes the tax deed *prima facie* evidence of certain things, and then provides that "any judgment for the sale of real estate for delinquent taxes, rendered after the passage of this act, except as otherwise provided in this section, shall estop all parties from raising any objections thereto, or to a tax title based thereon, which existed at or before the rendition of such judgment or decree, and could have been presented as a defense to the application for such judgment in the court wherein the same was rendered; and as to all such questions the judgment itself shall be conclusive evidence of its regularity and validity in all collateral proceedings, except in cases where the tax or special assessments have been paid, or the real estate was not liable to the tax or assessment."

We do not concur in the view of appellee, but we think it is clear that this case falls within the exception named in the last clause of the section. A portion of the taxes levied were illegal, and the land was not liable for such tax. The fact that a large proportion of the tax was legal does not change the

result. The illegal portion of the tax rendered the judgment and sale void. *McLaughlin* v. *Thompson*, 55 Ill. 249, is a case in point. There it was held, that if any portion of the tax upon which a judgment is rendered was illegal, or if the judgment was for too large a sum, a sale and tax deed based upon such judgment would be void. The same doctrine is announced in *Riverside Co.* v. *Howell*, 113 Ill. 256. As the real estate was not liable for the tax as levied, the judgment did not prevent appellee from relying on the illegality of the tax.

We think the court erred in holding the tax sale valid, and for this error the judgment will be reversed as to lots 15 and 16, block 2, Yearby's subdivision (the property herein involved), and the cause will be remanded.

*Judgment reversed.*