## City of Indianola *v.* Faison *et al.*

(Division A. Feb. 16, 1931.)

[132 So. 554. No. 29215.]

See, also, 156 Miss. 872, 127 So. 558.

**Frank E. Everett** and **Moody & Johnson**, all of Indianola, for appellant.

Forrest G. Cooper and Earl T. Thomas, both of Indianola, for appellees.

McGowen, J., delivered the opinion of the court.

In 1929 the mayor and board of aldermen of the city of Indianola adopted a resolution declaring their intention thereafter to pave or surface Alexander avenue within certain boundaries pursuant to chapter 194 of the Laws of 1924, Code of 1930, sections 2558 to 2573, inclusive, and fixing a day for a hearing, in accordance with section 4 of said law, section 2561, Code of 1930. At the time and place fixed in the publication of said notice a protest was filed against the proposed improve-

ment signed by a majority of the property owners, provided Mrs. Lillie E. Cox and Jessie G. Hughes were entitled to protest under the law. The mayor and board of aldermen held that Mrs. Cox and Jessie G. Hughes were not entitled to be counted as protestants, and ordered the improvement. The protestants appealed to the circuit court, and the case was heard on an agreed statement of facts by the judge of said court, who reversed the decision of the mayor and board of aldermen and held that Mrs. Cox and Hughes had a right to protest, in virtue of said statute, and directed that the proposed improvement be abandoned by the city board.

The agreed statement of facts shows that neither Mrs. Cox nor Hughes resided on the street proposed to be improved, within the proposed area. Mrs. Cox owned a house and lot abutting on the street which was rented by her to Fletcher and which was, at the time of the trial and prior thereto, occupied by him as a tenant of Mrs. Cox. Hughes likewise did not reside on his property, but owned a house and lot which abutted this street, within the proposed area, and which was occupied by his tenant. Neither Mrs. Cox nor Hughes were residing in the houses owned by them within the proposed area.

The decision of this case involves a construction of section 4 of said chapter 194 which is in these words: "At said meeting or at a time and place to which same may be adjourned, any person aggrieved may appear in person, by attorney or by petition, and may object to or protest against said improvement. The governing authority shall consider the objections and protests if any and may confirm, amend, modify or rescind the resolution of necessity, and shall determine whether said improvement shall be made and how the cost thereof shall be paid. The determination of such governing authority shall be final and conclusive; provided, however, that if a majority of property owners actually residing

on property owned by them and included within that part of any street, avenue, etc., ordered to be specially improved, or otherwise actually occupying property owned by them and included within that area shall file a protest, then the improvement shall not be made.''

The question presented by the appeal of the city of Indianola here is: Does the quoted language following the word ''provided'' create only one class of property owners who are entitled to protest against proposed improvements, or is there a specific designation of two classes, and, if more than one, of whom do they consist? Quoting again the language to be construed, we have this: ''If a majority of property owners actually residing on property owned by them (within the proposed area) . . . or otherwise actually occupying property owned by them (within the proposed area) . . . shall file a protest, then the improvement shall not be made.'' Setting forth this language in this manner demonstrates that the legislature did not intend to limit or restrict those entitled to protest to the property owners actually residing on the street. That class is named in the first clause quoted and, there can be no dispute about it, they are entitled to protest. But, do the words ''or otherwise actually occupying the property owned by them'' create a different class from that named in the first clause? We think it is obvious that the legislature would not have carefully used the language of the second clause if it had not intended to permit other interested parties than those owners residing on their property within the proposed area to protest against the proposed improvement affecting their property in the same manner and to the same extent as it did the owners actually residing in the proposed area. The language selected by the legislature ''or otherwise actually occupying the property owned by them'' is certainly broad enough to include a stable in which the owner

would build a garage in which to keep his car on a lot within the proposed area. It is broad enough to include a stable in which the owner of the property would maintain his horse or other animal, even if he ate and slept in a home occupied by him on another street and maintained his garage or barn within the proposed area; all of these, in our judgment, would be included within the second class. Why then should the owner of property within the proposed area be said to not actually occupy his·lot if he places human beings thereon other than himself, from whom he collects rent, although he is a nonresident of the particular area? If the legislature had intended to exclude nonresidents, we think these illustrations demonstrate that it did not do so. If it had intended to limit and restrict the qualifications of a protestant, it might easily have said in the first clause, in addition to and following the words "actually residing," "or physically and personally occupied by them." It is the general rule that the word "occupy" means possession. There are exceptions, none of which seem applicable here. We can see no reason for applying any strict rule of construction to this statute which affects a taxpayer whose property is to be vitally affected by the proposed improvement. For example, Alexander avenue might have five property owners actually residing within the area proposed to be improved. Twenty-five people might own houses and lots within said area, rented to tenants. Can it be said that when the legislature went to the pains of writing the second clause it intended to confer the benefit of protesting on the five as against the twenty-five owners, who had the same interest in the property and who would be desirous of having their property and the value thereof enhanced and made more desirable for the occupancy of tenants, as their profit would be enhanced by the return of higher rents? The limitation on the power of the governing

authorities of the municipality to make these improvements is found in this proviso, and the right of veto is conferred upon two classes in the nature of a power of veto granted such classes to restrain the municipal board from making such special improvements.

Although the parties to this litigation are represented by able counsel, neither side calls our attention to any case upon the point involved. Counsel for the appellee calls our attention to several statutes in this state, none of which seem to be of very great aid in construing this language, and contends that the words "actually occupying" mean not only "personally occupying" but also occupying through agents, trustees, bailees, and tenants. He calls attention to our adverse possession statute, section 2287, Code of 1930, the applicable part of which is, "Ten years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title," and the statute seems to emphasize the words "actual occupant." Under this statute our court held in Lindenmayer v. Gunst, 70 Miss. 693, 13 So. 252, 35 Am. St. Rep. 685, that actual occupancy, through a tenant, was the occupancy of the owner within the meaning of the statute. A nonresident of the state in that case was claiming title to lands by adverse possession through and by the occupancy of his tenant. This case seems to be in harmony with the majority of the courts of this country.

Another statute of the many recited to us is the three year tax title statute, section 2288, Code of 1930, in which the title is as follows:

"Three years' actual occupation under a tax title bars suit," and which begins in this language: "Actual oc-

cupation for three years, after two years from the day of sale . . . shall bar any suit to recover such land or assail such title because of any defect in the sale of the land for taxes." Applying the Lindenmayer case, it would hardly be supposed that this statute would limit the occupancy to the personal presence of the holder of the tax title, but, as in the Lindenmayer case, it would certainly be held that the appellant owner of the tax title would occupy through and by virtue of the occupancy of his tenants.

We think these statutes are not decisive of the question, but they are persuasive enough that the legislature did not mean a vain repetition when it enacted the second clause quoted herein. Webster defines "occupant" as: "One who occupies, or takes possession; one who has the actual use or possession, or is in possession of, a thing." Bouvier defines "occupant" as one who has actual use or possession of a thing. 3 Bouv. Law Dict. 2398. Generally the words "possession and occupation" are used synonymously with reference to land leases and like incidents. See Woods v. Broder, 129 App. Div. 122, 113 N. Y. S. 335; Nathan v. Dierssen, 146 Cal. 63, 79 P. 739. The only authority we have found that seems to sustain the appellant's contention is the case of In re Handley's Estate, 208 Pa. 388, 57 A. 755, in which case a testator gave to his housekeeper for life the use of certain premises occupied by him. A portion of the premises was at the time of his death occupied by him as a residence, and a portion occupied by a bank paying a monthly rental to him. The court held that the housekeeper acquired the use of the portion of the premises occupied as a residence only, and did not take that portion which was used by the bank. We think the meaning of the testator was clear in that case, and that it is not authority for appellant's position here.

We therefore are of the opinion that the legislature conferred the right to protest upon owners of land, though nonresidents of the area, who occupied same through their tenants, and that the protestants, Cox and Hughes, are properly counted as protestants within the meaning of the second clause of this statute. The court below so held.

Affirmed.