People of the State of Illinois, Plaintiff-Appellee, v. Frank L. LaPorte, et al., Defendants. On Appeal of Gloria Gibbs, Defendant-Appellant.

Gen. No. 48,065.

First District, Third Division.

November 23, 1960.

Cooney and Stenn, of Chicago (C. D. Snewind, of counsel) for appellant.

Benjamin S. Adamowski, State's Attorney of Cook county (Francis X. Riley and Alan S. Ganz, Assistant State's Attorneys, of counsel) for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

A temporary injunction was issued in an action, brought by the State's Attorney of Cook County, to abate, as a public nuisance, the property at 100 S. State Street, Calumet City. Twenty-two defendants, associated with a night club known as the Follies Bergere located at that address, were enjoined from maintaining the premises for the purpose of lewdness or prostitution and from maintaining or permitting

any such acts within the jurisdiction of the court. Gloria Gibbs was found guilty of violating the injunction and was sentenced to six months in the County Jail for contempt of court.

█ The complaint was brought under the Public Nuisances Act, Ill. Rev. Stat. ch. 100½, secs. 1–11 (1959). Section 1 of that act provides:

> "(1) That all buildings and apartments, and all places, and the fixtures and movable contents thereof, used for the purposes of lewdness, assignation, or prostitution, are hereby declared to be public nuisances, and may be abated as hereinafter provided. The owners, agents, and occupants of any such building or apartment, or of any such place shall be deemed guilty of maintaining a public nuisance, and may be enjoined as hereinafter provided."

It will be noted that the statute empowers the court to enjoin only owners, agents and occupants of a place charged with being a public nuisance. The fundamental question in this appeal is whether the court had jurisdiction to enjoin the defendant. She and other girls were charged with being inmates, and according to the affidavits and the evidence, she solicited prostitution and engaged in acts of lewdness. There was no evidence that she was an owner or agent, and none which indicated any proprietary interest in the business or the premises. The question narrows, therefore, to whether, as an inmate, she was also an occupant within the meaning of the statute. The record does not show that this particular question was presented to the trial judge. However, since it relates to the jurisdiction of the court, it may be raised for the first time on appeal. Sunga v. Lee, 13 Ill.App.2d 76, 141 N.E.2d 63; 2 I. L. P., Appeal and Error, sec. 181.

An occupant is defined by Webster (New International Dictionary, 2d Edition, 1958) as "one who oc-

141

cupies, or takes possession; one who has the actual use or possession of a thing." Black's Law Dictionary, 4th Edition, 1951, says an occupant is "a person having possessory rights, who can control what goes on in the premises. . . . One who occupies and takes possession, one who has the actual use, possession or control of a thing." Many years ago one of the meanings of the verb "to occupy" was to have sexual intercourse, and the word "occupant" came to mean a prostitute. But the use of both words in this sense fell into disfavor during the seventeenth and eighteenth centuries and had become obsolete long before 1915 when the Public Nuisances Act was passed. Black in 1891 and Bouvier in 1914 agreed that occupant meant one who has the actual use, possession or control of a thing. Black's Dictionary of Law, 1st Edition, 1891; Bouvier's Law Dictionary, 8th Edition, 1914.

These definitions, and others of the same purport, have been applied by the courts when called upon to interpret various statutes and ordinances using the word "occupant" or its related words. For example, it has been held that a person who, without paying for the privilege, stored crops on land with the permission of the tenant was not an occupant of the land, Drake v. Ogden, 128 Ill. 603, 21 N. E. 511; a person, who had an apartment of his own, was not an occupant of a relative's apartment although he had lived in the latter's home for several months, Fifth Ave. Estates, Inc. v. Weaver, 16 Misc.2d 236, 185 N.Y.S.2d 164; a corporation employed by a theater company to operate a theater, owned by the latter, was held to be an employee and not an occupant of the theater, City Theatres Co. v. Skouras Theatres Corp., 150 Misc. 78, 268 N. Y. S. 455; a person cultivating crops upon land, who did not reside upon it and who had no privity with the owner through conveyance, license, lease, contract or other act, was held not to be an occupant,

142

Parsons v. Prudential Real Estate Co., 86 Neb. 271, 125 N. W. 521. In construing a section of the National Prohibition Act containing the words "owner, lessee, tenant or occupant," which was analogous in some respects to the Illinois statute under consideration in that it provided for the abatement of nuisances, the court held that a bartender, who was in charge of the premises during the hours he was on duty, was an employee and not an occupant. United States v. Fox, 60 F.2d 685 (2d Cir. 1932); United States v. White, 60 F.2d 958 (2d Cir. 1932). See also Durfee v. Keiffer, 168 Neb. 272, 95 N.W.2d 618; Leone v. Bilyeu, 361 Mo. 974, 238 S.W.2d 317; City of Indianola v. Faison, 159 Miss. 520, 132 So. 550.

■ ■ It is to be presumed that the legislature intended a word to have its ordinary and generally understood meaning unless a statutory definition indicates a contrary intention. Farrand Coal Co. v. Halpin, 10 Ill.2d 507, 140 N.E.2d 698; 34 I. L. P., Statutes, sec. 103. The aim of statutory construction is to ascertain the legislative intent by examining not only the language employed, but the evil to be remedied and the objective sought to be accomplished. Schoellkopf v. DeVry, 366 Ill. 39, 7 N.E.2d 757. A study of the act in question shows clearly that our legislature used the word "occupant" precisely as defined by the lexicographers and as applied by the courts in the cases cited.

■ The primary purpose of the act, as stated in its title, is to *suppress* places maintained for lewdness, assignation or prostitution. To this end section 5 authorizes a decree (1) enjoining the use of the premises for any purpose for one year, (2) directing the sheriff to remove and sell all fixtures used in conducting the nuisance, (3) perpetually restraining the defendant from maintaining or permitting the particular nuisance, and (4) permanently enjoining the defendant from maintaining any such nuisance within the juris-

diction of the court. The first three provisions effectuate the legislative objective of suppressing the nuisance, but before they can be brought into play and an owner or occupant deprived of the use of his property, it is necessary that the court have jurisdiction over a proper defendant, someone who can control what is going on in the premises. Obviously, a person who is nothing more than an inmate does not have such control. The aim of the fourth provision is not to enforce by injunction the criminal law pertaining to keepers of houses of ill fame (Ill. Rev. Stat. ch. 38, sec. 162 (1959)), but rather to prevent those responsible for conducting the closed nuisance from opening up other ones in other places. People ex rel. Barrett v. Fritz, 316 Ill. App. 217, 45 N.E.2d 48; People ex rel. Butler v. King, 289 Ill. 462, 124 N. E. 592.

In the King case the Supreme Court interpreted the word "defendant" and section 2 of the act, the same section under which the injunction was issued against Gloria Gibbs. This section empowers a court to issue a temporary injunction, ". . . enjoining the defendant from maintaining any such nuisance within the jurisdiction of the court. . . ." The Supreme Court had under consideration a temporary injunction against the keeper of a house of prostitution who was herself a prostitute. The evidence did not show her to be an owner of nor an agent for the building in which she conducted her business, but it did show that she used the premises and allowed others to do so for lewdness and prostitution and that she kept in her house and under her charge various girls for that purpose. In sustaining the injunction the court observed: "It is also clear that the word 'defendant' as used in said sentences of the act refers to the lessee or the party who is directly conducting the nuisance,—i. e., the house or place of lewdness, assignation or prostitution." It is apparent that the court was speaking, not

144

of an owner or an agent, but of an occupant and that it regarded an occupant to be someone of authority, such as the defendant King, who could control the nuisance.

There are additional considerations arising from other sections of the act which confirm our conviction of the legislative intent. For instance, section 10 of the act protects an owner whose leased premises are being used against his will for the purpose of lewdness or prostitution. It provides that he may proceed against the "lessee or occupant" and that the lease or contract is voidable at his option. The use of the word "occupant" in this association indicates that the legislature had in mind someone who was in the premises as a matter of right.

Section 3 says that at the hearing upon the merits of the case the general reputation ". . . of the inmates thereof . . . shall be admissible for the purpose of proving the existence of such nuisance." This is the equivalent of saying that the reputation of the inmates may be used as proof against the defendant. Thus, inmates are distinguished from the defendant, who, as we have seen, must be an owner, agent or occupant. Of course, an inmate could also be an occupant if she had the right to possession of the apartment or building where the nuisance is being conducted. But there is no evidence of such dual relationship in the present case. Gloria Gibbs was not an occupant per se, just because she occupied space as an incident to her employment or trade.

In its petition for an injunction the State itself distinguished among the 22 defendants those who held responsibility and roles of authority and those who did not. One defendant was described as a trustee of the property under a land trust, one as a partner, one as the manager, three as liquor licensees, one as a pimp, seven as employees such as bartenders, and the other

eight as inmates. The State did not designate any as occupants, but from its designations it appears that the inmates were the furthest removed from this class. ■ Gloria Gibbs, as an inmate, had no possessory rights in the premises nor proprietary rights in the business. She could not stop what was going on. Her ceasing to work there would not have brought about a cessation of the night club's illicit activity nor would have caused it to close its doors. We are of the opinion that she was not an occupant within the meaning of the statute. The court, therefore, did not have jurisdiction over her and the order finding her guilty of contempt and imprisoning her for six months will be reversed.

Reversed.

SCHWARTZ, P. J. and McCORMICK, J., concur.