STATE, EX REL. EWING, APPELLEE, *v.* A MOTION PICTURE FILM
ENTITLED "WITHOUT A STITCH," ET AL., APPELLANTS.

(No. 6877—Decided July 9, 1971.)

*Messrs. Bugbee & Conkle* and *Mr. James Clancy*, for
appellee.

*Messrs. Fuhrman, Gertner, Britz & Barkan* and *Mr.
Edmund C. Grainger, Jr.*, for appellants.

POTTER, P. J. This cause is before this court *de novo.*
We have reviewed and weighed the evidence submitted in
the court below and in this court. Fortunately, after July
1, 1971, the anomalous practice of one trial and one trial
*de novo* is abolished under Rule 2, Ohio Rules of Appel-
late Procedure.

The case comes to this court on the complaint of the
petitioner for an injunction to enjoin the exhibition of the
motion picture film, "Without a Stitch," and to abate the

same as a public nuisance in the city of Toledo, Ohio, pursuant to R. C. 3767.01 *et seq.* Answers were filed by the defendants James Wescott, Art Theatre Guild, Inc., and Tonylyn Productions, Inc. Mr. Wescott is the manager of the theatre. Art Theatre Guild, Inc., is a corporation organized under the laws of Ohio and operates the Westwood Art Theatre and is wholly owned by Louis K. Sher. Defendant Tonylyn Productions, Inc. is a corporation organized under the laws of the state of California and it owns the distribution rights in and to the said film. Although we are to treat this case as if the cause had never been tried below (see *Lincoln Properties* v. *Goldslager* (1969), 18 Ohio St. 2d 154), we note that the court below permanently enjoined the defendants and all persons acting for them from exhibiting the subject motion picture film, and that the defendants filed an appeal bond in the amount of $20,000 to perfect their appeal on law and fact and also to stay the execution of the lower court's injunction until a final adjudication is made in the appellate courts of this state, including the Supreme Court of Ohio.

The essential issue before this court is whether the film "Without a Stitch" is obscene and, therefore, subject to the provisions of R. C. 3767.01 *et seq.* To the extent the term "obscene" has been defined or is capable of definition, we look to *Roth* v. *United States* (1957), 354 U. S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 and, for further elaboration, to *A Book Named "John Cleland's Memoirs of a Woman of Pleasure"* v. *Attorney General of Mass.* (1966), 383 U. S. 413, 16 L. Ed. 2d 1, 86 S. Ct. 975.

After reviewing the varied decisions since Roth, we appreciate the exasperation of some judges and authors when they suggest that the law is in a fragmented state of bewilderment. After such an examination, Justice Stewart's observation that, "but I know it when I see it" takes on new dimensions. It is not the purpose of this opinion to add to the already voluminous array of comment on this subject, but to set forth for properly interested parties our reasoning, findings and conclusions.

In *Roth, supra*, Mr. Justice Brennan, who delivered the opinion of the court, made the following observations at

page 484: "But implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance." He also said the following at page 485: "We hold that obscenity is not within the area of constitutionally protected speech or press." In *Roth*, also, was the answer to the argument that the constitution protects the presentation of obscenity in a theatre open only to consenting adults. Mr. Justice Brennan in rejecting this argument said proof of a clear and present danger of antisocial conduct is not required. In support thereof he cited *Beauharnais* v. *Illinois*, 343 U. S. 250.

The test laid down by *Roth* is found at page 489 of the opinion, as follows:

"* * * [w]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest. * * *"

The court, in *Memoirs, supra*, at page 418, seized upon the words of the *Roth* case, "utterly without redeeming social importance," and fashioned the following definition of obscenity with three elements which must coalesce:

"* * * [I]t must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

This definition was quoted with approval in *State* v. *Mazes*, 7 Ohio St. 2d 136 at 137 (reversed on other grounds in 388 U. S. 453, 18 L. Ed. 2d 1315, 87 S. Ct. 2105).

In close cases, it has been suggested that evidence of pandering may be probative with respect to the nature of the material in question. *Ginsburg* v. *United States* (1966), 383 U. S. 463, 86 S. Ct. 942, 16 L. Ed. 2d 31; *P. B. I. C., Inc.*, v. *Byrne* (D. Mass. 1970), 313 F. Supp. 757.

The case of *Stanley* v. *Georgia* (1969), 394 U. S. 557, 22 L. Ed. 2d 542, 89 S. Ct. 1243, considered the private possession of obscene material, and the Supreme Court of the United States found that this was a protected activity.

The court in that case reiterated that the *Roth* decision was still the law, however, some scholars and judges, although we do not mean to imply that the two categories cannot coalesce, thought that they noted a hole in the dike. Thereafter, the country was inundated by a flood of obscenity and favorable court decisions. The varied nature of the subject helped to confuse the issues, *e. g.*, private possession, commercial exploitation, method and type of dissemination, *e. g.*, books, pictures, movies, and live presentation. See 50 American Jurisprudence 2d 481, Lewdness, Indecency, and Obscenity, Section 26. The individual positions of the Justices of the Supreme Court, plus a rash of per curiam reversals of state decisions, helped spawn conflicting appellate decisions before and after *Stanley, supra. Jacobellis* v. *Ohio*, 378 U. S. 184, 12 L. Ed. 2d 793, 84 S. Ct. 1676; *United States* v. *Klaw* (C. C. A. 2, 1965), 350 F. 2d 155.

Two recent Supreme Court cases have done much to bring some semblance of order to the morass of obscenity decisions. The cases decided after the decision in the Lucas County Common Pleas Court support that decision and they are *United States* v. *Reidel* (May 1971), 28 L. Ed. 2d 813, and *United States* v. *Thirty-seven (37) Photographs, Milton Luros, Claimant* (May 1971), 28 L. Ed. 2d 822. These cases refuted the argument that *Stanley*, in effect, emasculated *Roth*. The principles of *Roth* are reaffirmed and *Stanley* is limited to the facts of that case. A "poor *Stanley*," constitutionally may not have obscenity commercially distributed to him. In *Reidel, supra*, at page 816, the court said "obscenity is not within the area of constitutionally protected speech or press," and then quoted *Stanley*, at page 817, as follows:

"Roth and the cases following that decision are not impaired by today's holding. As we have said, the states retain broad powers to regulate obscenity. * * *" In reference to the district court, and perhaps other courts which have given *Stanley* too wide a sweep, see the following from *Reidel* at page 817:

"* * * To extrapolate from Stanley's right to have and peruse obscene material in the privacy of his own home a First Amendment right in Reidel to sell it to him would

effectively scuttle Roth, the precise result that the Stanley opinion adjured. Whatever the scope of the 'right to receive' referred to in Stanley, it is not so broad as to immunize the dealings in obscenity in which Reidel engaged here—dealings which Roth held unprotected by the First Amendment.''

And at page 818:

''Roth and like cases have interpreted the First Amendment not to insulate obscenity from statutory regulation.''

In the concurring opinion by Mr. Justice Harlan, we find the following at page 818:

''Appellee here contends, in effect that the Stanley 'right to receive' language, 394 U. S. at 564-565, 22 L. Ed. 2d at 549, constituted recognition that obscenity was constitutionally protected for its content. Governmental efforts to proscribe obscenity as such would, on this interpretation, not be constitutional; rather, the power of both the state and federal governments would now be restricted to the regulation of the constitutionally protected right to engage in this category of 'speech' in the light of otherwise permissible state interests, such as the protection of privacy or the protection of children.

''That interpretation of Stanley, however, is flatly inconsistent with the square holding of *Roth* v. *United States*, 354 U. S. 476, 485, 1 L. Ed. 2d 1498, 1507, 77 S. Ct. 1304 (1957): * * *

''Either *Roth* means that government may proscribe obscenity as such rather than merely regulate it with reference to other state interests, or *Roth* means nothing at all. * * *''

In *United States* v. *Thirty-Seven (37) Photographs*, *supra*, in reference to the commercial distribution of obscenity, the court's observations at page 834 are appropriate.

''* * * Stanley's emphasis was on the freedom of thought and mind in the privacy of the home. But a port of entry is not a traveler's home. * * * Whatever the scope of the right to receive obscenity adumbrated in *Stanley*, that right, as we said in *Reidel*, does not extend to one who

is seeking, as was Luros here, to distribute obscene materials to the public, nor does it extend to one seeking to import obscene materials from abroad, whether for private use or public distribution.''

With this review, we turn to the question of whether the plaintiff has carried his burden of proof. The evidence consisted of testimony, exhibits, and the viewing of the film by this court at the request of all the parties. Despite this request, the defendants argue that this court cannot consider this film as evidence, but that we must consider the viewing as if it were only a view of the place to enable us to better apply the evidence offered. In short, the defendants say that we cannot believe our eyes, an argument advanced with some success by the weavers of the king's clothes in the tale, *The Emperor's New Clothes*, written by an earlier Danish author, Hans Christian Andersen. This court does not need a little boy's exclamation to establish that the king, in fact, had nothing on.

The cases clearly establish the right, if not the necessity, of the court to view the material; this the court has done. See *Jacobellis* v. *Ohio* (1964), 378 U. S. 184, 12 L. Ed. 2d 793, 84 S. Ct. 1676; *Womack* v. *United States* (D. C. Cir. 1961), 294 F. 2d 204; *Evans Theatre Corp.* v. *Slayton* (Ga. 1971), 180 S. E. 2d 712; *Kahm* v. *United States* (C. C. A. 5, 1962), 300 F. 2d 78.

By any test, medium-core, hard-core, as if *res ipsa loquitur*, obscenity per se, patently obscene, or screaming obscenity, the film was obscene. See *State, ex rel. Sensenbrenner,* v. *Adult Bookstore* (1971), 26 Ohio App. 2d 183; *Jacobellis* v. *Ohio* (1964), 378 U. S. 184, 12 L. Ed. 2d 793, 84 S. Ct. 1676; *United States* v. *Klaw* (C. C. A. 2, 1965), 350 F. 2d 155; *Morris* v. *United States* (D. C. Cir. 1969), 259 A. 2d 337; *Womack* v. *United States* (D. C. Cir. 1961), 294 F. 2d 204; *Dunn* v. *Maryland State Board of Censors* (Md. 1965), 213 A. 2d 751. However, considering the evidence and applying the tests as enumerated in *Roth* v. *United States, supra,* and as further elaborated in *Memoirs, supra,* we find that to the average person applying national contemporary community standards the dominant theme of the film, taken as a whole, appeals to a prurient interest in

sex, that the film goes substantially beyond customary limits of candor and affronts contemporary community standards relating to the description or representation of sexual matters; that the film is utterly without redeeming social value, that the three elements coalesce, and that the film, "Without a Stitch," is obscene. We have also considered as indicative but not conclusive of national standards the laws of the state of Ohio* and other states. See *Roth*, *supra*, page 485.

Briefly, we state that the so-called "plot" is as fol-

---

*Among the laws of Ohio which are indicative are the following. See R. C. 2905.34. Its pertinent parts are as follows:

"As used in Sections 2903.13 to 2903.16, inclusive, and Sections 2905.34 to 2905.39, inclusive, of the Revised Code:

"(A) Any material or performance is 'obscene' if, when considered as a whole and judged with reference to ordinary adults, any of the following apply:

"(1) Its dominant appeal is to prurient interest;

"(2) Its dominant tendency is to arouse lust by displaying or depicting nudity, sexual excitement, or sexual conduct in a way which tends to represent human beings as mere objects of sexual appetite;

"(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;

"(4) It contains a series of displays or descriptions of nudity, sexual excitement, sexual conduct, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient interest, when the appeal to such interest is primarily for its own sake or for commercial exploitation, rather than for a genuine scientific, educational, sociological, moral, or artistic purpose.

"* * *

"(E) 'Material' means any book, pamphlet, ballad, printed paper, phonographic record or tape, motion picture film, print, picture, figure, image, description, or other tangible thing capable of being used to arouse interest through sight, sound, or in any other manner.

"(F) 'Performance' means any motion picture, preview, play, show, skit, dance, or other exhibition performed before an audience."

This statute was effective September 15, 1970, after the filing of the complaint, but before the decision in the lower court. The film was exhibited after the effective date, and the trial *de novo* was held after the effective date of the statute. Other statutes so considered are:

R. C. 2905.08—Adultery or fornication; R. C. 2905.10—Inducing illicit intercourse; R. C. 2905.26—Prostitution, lewdness and assignation defined; R. C. 2905.30—Indecent exposure; R. C. 2905.31—Nudism; R. C. 2905.44—Sodomy.

114

lows. The principal participant is an unmarried, seventeen and a half year old girl about to be a senior in high school. She finds that when confronted with intimate relations with a male classmate she is frigid. To overcome what she concludes is an unusual attitude, she visits a doctor. The doctor proceeds to effect a cure, which includes a variety of sexual stimulations, including intercourse. Without his white coat and when the doctor was in the nude giving therapeutic treatment his numerous tatoos gave one the impression that his internship was taken with the Danish merchant marine. After treatment, the young girl started on a hitchhiking tour of Europe to further effect her cure. Defendants argue that the scenery and photography was very good and this gives to the picture some redeeming social value. The photography is good and the scenery is interesting, but this is not a travelogue, and when the sun slowly sets in the west, it ushers in another night of sexual excess and aberration. This included nude scenes of vaginal and anal copulation, lesbian relations, participation in a "stag" film, fellatio, cunnilingus, and sex orgies between two women and a male, and two males and the "star" of the production, the display of a dildo, sadism and masochism. All acts were simulated except the fondling and suckling of the patient's breast by the doctor. It is obvious that the presentation was to appeal to titillation, not travel.

As cured, the patient returns to her doctor to exhibit her new found radiant health and peace of mind. We find no redeeming social value in this film. If there is a plot, it was only a facade or pretext to exhibit what for years has been known as a "stag" film.

We find, further, that the defendants were pandering as defined in *Ginsburg* v. *United States, supra.* The defendants' sole emphasis was on the sexual, provocative aspects of this film. The advertising and promotional materials were slanted to appeal to the erotic interests of their customers.

Since this action is brought under R. C. 3767.01 et seq., we set forth the applicable provisions.

R. C. 3767.01:

"(C) 'Nuisance' means that which is defined and declared by statutes to be such and also means any place in or upon which lewdness, assignation, or prostitution is conducted, permitted, continued, or exists, or any place, in or upon which lewd, indecent, lascivious, or obscene films or plate negatives, film or plate positives, films designed to be projected on a screen for exhibition films, or glass slides either in negative or positive form designed for exhibition by projection on a screen, are photographed, manufactured, developed, screened, exhibited, or otherwise prepared or shown, and the personal property and contents used in conducting and maintaining any such place for any such purpose. * * *"

R. C. 3767.02:

"Any person, who uses, occupies, establishes, or conducts a nuisance, or aids or abets therein, and the owner, agent, or lessee of any interest in any such nuisance together with the persons employed in or in control of any such nuisance by any such owner, agent, or lessee is guilty of maintaining a nuisance and shall be enjoined as provided in Sections 3767.03 to 3767.06, inclusive, of the Revised Code."

Under the conditions set forth in R. C. 3767.03, any person of the county may bring an action in equity in the name of the state to abate the nuisance. There exists a choice of remedies with injunction being one. See *Kingsley Books, Inc.,* v. *Brown* (1957), 354 U. S. 436, 1 L. Ed. 2d 1469, 77 S. Ct. 1325; *People* v. *Linn* (1941), 18 Cal. 2d 872, 118 P. 2d 472; *Evans Theatre Corp.* v. *Slayton* (Ga. 1971), 180 S. E. 2d 712; 50 American Jurisprudence 2d 464, Lewdness, Indecency and Obscenity, Section 10.

The statute is a constitutionally permissible means of controlling obscenity. See 34 Ohio Jurisprudence 2d 160, Lewdness, Indecency, Obscenity, and Profanity, Section 8; *Grove Press, Inc.,* v. *Flask,* Civil No. C 69-735, District Court Northern District of Ohio, Eastern Division.

Having found the film obscene, we also find that a nuisance, as defined in R. C. 3767.01, was maintained, and the

applicable provisions of R. C. 3767.01 et seq., are invoked and are mandatory. We permanently enjoin the defendants, and each and all persons acting for them from exhibiting the subject motion picture film; the Westwood Art Theatre where the film was exhibited is ordered closed for one year from the date of the judgment entry to be filed in this court (R. C. 3767.06); a tax of $300 is imposed on the defendants and against the real property upon which the Westwood Art Theatre is located (R. C. 3767.08 and R. C. 3767.09). The lower court having enjoined the exhibiting of the film and the defendants desiring to stay the execution of the order of injunction in order to continue to exhibit the film while the appeal is pending filed a bond and the court stayed the enforcement. (See 29 Ohio Jurisprudence 2d 410, Injunctions, Section 181, as to the terms and conditions of a decree or order.) The defendants shall now account for the box office receipts arising out of the exhibiting of the motion picture film entitled "Without a Stitch," from the effective date of the Court of Common Pleas order enjoining the presentation of the film, September 19, 1970, up to and including the final performance. The majority of this court are of the opinion that not to sequester the receipts would render the lower court's order a nullity. The box office receipts shall be paid to the Lucas county treasurer, and the costs are assessed against the defendants.

WILEY, J., concurs.

BROWN, J., concurring in part, and dissenting in part.

I concur in the granting of the permanent injunction against defendants and the other remedial relief provided by R. C. Chapter 3767 and stated in the last paragraph of the majority opinion, and accept the excellent analysis of the law leading to the final judgment, but I dissent from that part of the judgment which orders the defendants to account for the box office receipts arising from the exhibition of the film from the date of the Common Pleas Court's injunction on September 19, 1970, up to and including the final performance.

The only hinge upon which such an accounting order for box office receipts could swing is the Common Pleas Court's injunction order of September 16, 1970, which, *inter alia,* provides:

" * * * And said permanent injunction is to issue and become effective three days from the date of the filing of this order unless the defendants jointly, or any one of them, deposit an appeal bond in the amount of $20,000 to stay execution until final adjudication in the Appellate Courts of this State.

"The question of *forfeiture* as prayed for in the petition is stayed, pending final adjudication. * * *." (Emphasis added.)

And the appeal bond filed on September 16, 1970, pursuant to this injunction decree, which, *inter aliu,* provides:

"In the event that there is a final affirmance of the judgment of said Court of Common Pleas of Lucas County, Ohio, and said defendant, and/or any other defendants, pay all court costs and damages or *forfeitures* which may be assessed by said *Court of Common Pleas*, then this obligation shall be void * * *." (Emphasis added.)

Such a hinge is insufficient to swing such sweeping relief as an accounting for profits or receipts which, in substance, amount to a forfeiture or penalty. This is so for a number of reasons.

The foregoing decree, and the appeal bond, even if such bond is considered a contract by the defendants to pay a forfeiture which may be assessed upon affirmance on appeal, is the only slender reed upon which the decree ordering a forfeiture of box office receipts is based There is no lawful authority or foundation, statutory or otherwise, creating such a right or remedy of forfeiture. The parties cannot, by a contract, whether it be an appeal bond or otherwise, create jurisdiction by way of a new right or remedy such as forfeiture and agree to give a court such jurisdiction where no such right, remedy, authority or jurisdiction exists independently. 31 Ohio Jurisprudence 2d 518, Judgments, Section 28.

R. C. Chapter 3767, entitled Nuisances, under which the present injunction proceedings were maintained, provides

for various remedies, in addition to permanent injunctive relief such as is granted in the last paragraph of the majority opinion—the authority for the action there is derived from R. C. 3767.06 and R. C. 3767.09. However, in this statutory structure for relief in nuisance cases, there is singularly and glaringly absent any provision for accounting for and paying to the county treasurer or any other public body or officer the box office receipts arising out of exhibitions of the film, which amounts to a forfeiture or penalty. *Expressio unius est exclusio alterius.* 50 Ohio Jurisprudence 2d 165, Statutes, Section 188. A strict construction is generally accorded statutes which impose restrictions upon the use of private property, which, in general, interfere with private property rights or which permit the summary divestiture of title to property. *Perkins v. Hattery,* 106 Ohio App. 361, 50 Ohio Jurisprudence 2d 273, Statutes, Section 289.

Only where a penalty or forfeiture is mandatorily fixed by statute will equity, as a rule, apply the requirement of the statute. *Miller Oil Co.* v. *Abrahamson,* 252 Iowa 1058, 109 N. W. 2d 610; *State* v. *1920 Studebaker Touring Car,* 120 Ore. 254, 251 P. 701; *People* v. *Laport,* 28 Ill. App. 2d 139, 171 N. E. 2d 95; 20 Ohio Jurisprudence 2d 84, Equity, Section 37; 27 American Jurisprudence 606, Equity, Section 84; 66 Corpus Juris Secundum 934, Nuisance, Section 130.

In the absence of authority duly delegated to a court of equity, such court does not have equitable power or jurisdiction to enforce a forfeiture against the property such as a forfeiture of the profits accruing from property decreed to be a nuisance. 41 Ohio Jurisprudence 2d 169, Nuisances, Section 75; 39 American Jurisprudence 442, 446, Nuisances, Sections 171 and 173; 66 Corpus Juris Secundum 934, Nuisances, Section 130.

Further, even if the Court has power to assess or determine a forfeiture on the basis of an agreement of the defendant as expressed in the appeal bond, in consideration of a stay of execution (and this is gravely doubtful), that upon final affirmance of the judgment of the Court of Com-

mon Pleas the defendants "pay all court costs and damages or forfeitures which may be assessed by said *Court of Common Pleas,*" such cannot support an extended interpretation that defendants agreed to the assessment of a forfeiture by the *Court of Appeals* like the one in the present case.

The order for an accounting of box office receipts is predicated, as indicated in the last paragraph of the majority opinion, upon 29 Ohio Jurisprudence 2d 410, Injunctions, Section 181, which is entitled "Terms and Conditions of Decree or Order" and concerns itself with the conceded power of a court of equity in granting an injunction to attach to it, as a condition precedent to its effect, terms and limitations designed to serve the ends of justice. *State, ex rel. Cleveland,* v. *Court of Appeals,* 104 Ohio St. 96. This principle is sound law but wholly unrelated to the present case. The trial judge's injunction order, the pertinent parts being recited in the third paragraph of this concurring opinion, is entirely silent on the terms and conditions of the appeal bond and does not state that an accounting of box office receipts should be a condition of the appeal bond, and, on the contrary, states that the question of forfeiture "is stayed, pending final adjudication," whatever that means.

Neither is there anything in the transcript and pleadings of the Common Pleas Court stating that an accounting for box office receipts or forfeiture thereof is made by order of the Common Pleas Court a condition of the appeal bond staying execution of the judgment. The fact that the appellant and his surety inserted the clause "forfeitures which may be assessed in said Common Pleas Court" in the appeal bond does not make it a condition of the appeal bond "as is directed by the court making the order which is sought to be superseded" as provided by R. C. 2505.09, or "as the court may provide" as authorized by R. C. 2505.14, or "on such terms as are prescribed by the court in which the appeal is filed" as authorized by R. C. 2505.17. *Booher* v. *Lowe,* 79 Ohio App. 490; 3 Ohio Jurisprudence 2d 248, Appellate Review, Section 346,

Furthermore, the insertion of the clause concerning "fortfeitures" as part of the conditions in the appeal bond is contrary to the mandatory statutory provisions of R. C. 2505.14, regulating the conditions of an appeal bond operating as a stay of execution, which provides. *inter alia,* as follows:

"The * * * bond * * * shall be * * * subject to a condition to the effect that the party appealing shall abide and perform the order and judgment of the appellate court and pay all money, costs, and damages which may be required of or awarded against him upon the final determination of said appeal * * *."

Hence, the Common Pleas Court did not provide or prescribe or direct by order that the appeal bond contain a condition therein that defendants pay any *forfeitures* assessed (see *Booher* v. *Lowe, supra*) and, secondly, the Common Pleas Court was mandatorily precluded by R. C. 2505.-14 from making an assessment of forfeitures a condition of the appeal bond.

Therefore, the references to "forfeitures" in the appeal bond filed in the Common Pleas Court are nullities and meaningless. In passing, the observation should also be made that the Common Pleas Court did not determine or assess any forfeiture but postponed such pending appeal.

There is no Ohio case that has established as a principle of law that an injunction decree abating a nuisance carries with it an ancillary right to a forfeiture of the profit which arose from the nuisance abated. 41 Ohio Jurisprudence 2d 167, Nuisances, Sections 73, 74, 75; 29 Ohio Jurisprudence 2d 409, Injunctions, Sections 180 to 183; 20 Ohio Jurisprudence 2d 85, Equity, Sections 39 and 40. This is true of the law generally in the United States. A court, in granting equitable relief by injunction, may impose such terms and conditions as are demanded by justice and the regard for righteous conduct, but it may not impose conditions which lie outside its judicial power. *White* v. *Massee,* 202 Iowa 1304, 211 N. W. 339, 66 A. L. R. 1434; 42 American Jurisprudence 1101, Injunctions, Section 301; 43 Corpus Juris Secundum 951, Injunctions, Section 217.

Although a court of equity has judicial power to abate a nuisance by injunction and the right to private property is subservient to the public right to be free from nuisances, which may be abated without compensation to the owner of the offending property, yet the guarantee of due process of law prohibits the confiscation or forfeiture of property without compensation except where the property is taken in a valid exercise of the police power. 15A Corpus Juris Secundum 362, Confiscation; 16A Corpus Juris Secundum 915, 1089, Constitutional Law, Sections 645, 679; 36 American Jurisprudence 2d 611, 622, Forfeitures and Penalties, Sections 1, 15, 16; 24 Ohio Jurisprudence 2d 522, 524, Forfeitures and Penalties, Sections 2, 4.

The state or municipality may enact laws and ordinances imposing forfeitures on certain classes of acts, and will enforce the peace and dignity of the state or municipality, and these laws and ordinances are within the police powers of the state or municipality and valid so long as they are within the specific and clear limitations in the constitution. *Lindsay* v. *Cincinnati,* 172 Ohio St. 137; 24 Ohio Jurisprudence 2d 523, Forfeitures and Penalties, Section 3; cf. *Gribs* v. *Department of Liquor Control,* 153 Ohio St. 77. Forfeitures and penalties are regarded as odious, not being favored either in equity or at law, and statutory provisions for a forfeiture must be strictly construed. *State, ex rel. Lukens,* v. *Industrial Commission,* 143 Ohio St. 609; 24 Ohio Jurisprudence 2d 524, Forfeitures and Penalties, Section 4; cf. *United States* v. *Lovitt,* 328 U. S. 303, 18 A. L. R. 2d 291, and 16 American Jurisprudence 2d 754, Constitutional Law, Section 413.

Naturally flowing from the foregoing legal proposition is the following principle of law. In the absence of statute or other legislative enactment, the constitutional guarantee of due process of law prohibits the confiscation or forfeiture of property without compensation by order of any court. 16 American Jurisprudence 2d 689, 964, Constitutional Law, Sections 361, 550; 36 American Jurisprudence 2d 622, Forfeitures and Penalties, Section 16; 16A Corpus Juris Secundum 913, Constitutional Law, Section

645; 37 Corpus Juris Secundum 6, Forfeitures, Section 3; *cf. Kingsley Books, Inc.,* v. *Brown,* 354 U. S. 436. That part of the decree in the present case which orders forfeitures of box office receipts violates all the principles and constitutional prohibitions heretofore discussed and contained in the text and cases cited, and is therefore unconstitutional.

Neither can the box office receipts be ordered confiscated or forfeited as contraband, a term sometimes defined as an article which cannot be owned or possessed legally, or such as is capable of use only in the commission of a crime. Box office receipts are not contraband. 17 Corpus Juris Secundum 510, Contraband.

The decree of this court ordering an accounting and forfeiture of box office receipts, by reason of its unconstitutionality, exceeds the jurisdiction and legitimate powers of this court of appeals and is an open invitation to the party whose property is confiscated to resort to a utilization of an extraordinary writ or remedy to prohibit such unconstitutional confiscation. 44 Ohio Jurisprudence 2d 209, Prohibition, Section 26; Chapter 85, Section 1331, Title 28, U. S. Code, and footnotes 139 and 142, and Section 1332, footnote 156, and Chapter 155, Sections 2281 and 2283; *Elliott Advertising Co.* v. *Metropolitan Dade County* (C. C. A. 5, 1970), 425 F. 2d 1141.

However, a confiscation or fortfeiture of property must occur in the valid exercise of the police power. Such police power regarding confiscation or forfeiture of propperty requires statutory provision permitting and regulating the forfeiture proceedings consistent with due process of law, and such statutory provision for a forfeiture must be strictly construed. 24 Ohio Jurisprudence 2d 524, 525, Forfeitures and Penalties, Sections 4 and 5.

In the instant case, there was no statutory remedy or procedure providing for the confiscation or forfeiture of the box office receipts derived from the exhibition of the offending film. Hence, the forfeiture order is a nullity and violates the constitutional guarantee of due process of law. Sections 1, 16, 19, Article I, Ohio Constitution; Sections 9, 10, Article I, and amendments 5, 14, United States Consti-

tution; 16 American Jurisprudence 2d 751, Constitutional Law, Section 411, and page 698, Section 368.

Too much significance is placed in this case on the language in the Common Pleas Court final decree and in the appeal bond staying execution which provides in effect that the "defendants pay all court costs and damages or forfeitures which may be assessed by said Court of Common Pleas" in the event of final affirmance of the judgment of that court. Suppose the decree and appeal bond had provided that defendants, in addition to paying all costs, damages or forfeitures, would also "pay all fines and penalties and serve all jail sentences that might be imposed by the Common Pleas Court upon affirmance on appeal"? Would this agreement or statement of defendants in the appeal bond and any reference to it in the permanent injunction decree of the Common Pleas Court give the Court of Appeals or the Common Pleas Court power and jurisdiction to assess a $10,000 fine on any of the defendants or impose a 6-month jail sentence on any defendant? The answer is obviously in the negative. For the same reason, the Court of Appeals and the Common Pleas Court cannot assess a forfeiture or cause a confiscation of property where no such power or jurisdiction has been granted by law to the courts. The defendants, by a statement in the appeal bond, referring to forfeitures, or to any other matter such as crimes or jail sentences, cannot create jurisdiction of the subject matter in a court. In the present case, the court lacks jurisdiction of the subject matter of confiscation or forfeiture of private property of the defendants. Jurisdiction to render judgment in a case in which the court lacks jurisdiction of the subject matter cannot be acquired by consent of the parties. 31 Ohio Jurisprudence 2d 518, Judgments, Section 28.

For the foregoing reasons, this court should make no order concerning a confiscation or forfeiture of the box office receipts obtained by exhibiting the offending film in this case.

It is readily conceded that confiscation of the box office receipts obtained by defendants who trafficked in smut

in this case is a desirable solution and a desirable court decree, and is a method to deter the continued offensive conduct of defendants. However, what is desirable in this, and in many other situations, is not the equivalent of what is lawful or within the powers of this court or any other court to grant.