THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEROY WHITLEY *et al.*, Defendants-Appellants.

(No. 58228;

First District (2nd Division)—April 9, 1974.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Patrick Driscoll and Dennis O'Hara, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Leroy Whitley and Edward Thompson were indicted for attempt murder, armed robbery and two counts of aggravated battery. After a jury trial, they were acquitted of the attempt murder charge, but convicted of armed robbery and two counts of aggravated battery. Each defendant received concurrent sentences of 15 to 30 years for armed robbery, 4 to 5 years for one count of aggravated battery employing the use of a deadly weapon, and 8 to 10 years for the second count of aggravated battery causing great bodily harm. The State confesses error

in defendants' convictions on one count of aggravated battery.[1] Accorddingly, the convictions and sentences for aggravated battery employing the use of a deadly weapon are reversed. Defendants, in their appeals, raise the following alternative contentions: that the evidence failed to sustain the convictions for armed robbery; that the multiple convictions of armed robbery and aggravated battery were improper in that both convictions arose from a single transaction; that they were denied a fair trial by the introduction into evidence of unrelated crimes; and that the minimum sentences imposed should be reduced in conformity with the Unified Code of Corrections. The facts follow.

On February 5, 1972, at approximately 10 P.M., Mr. Eddie Kojimoto, the complaining witness, arrived at his apartment at 5510 N. Winthrop in Chicago. After entering his apartment, complainant undressed and hung his pants, containing a wallet and $65, on his bathroom door. He fell asleep while watching television and for a period of approximately 27 hours, although awaking periodically, remained in bed. On February 7, 1972, at approximately 1:30 A.M., complainant was aroused by repeated knocking on his front door. Glancing toward the door of his apartment, he observed one of the defendants peering into the apartment through an opening in the door made possible by the defendant's removal of a ventilator cover. One of the defendants stated to complainant that either he open the door or they would "break in." Mr. Kojimoto, who normally would not respond to knocking on his door, became frightened at the sight of defendants at his door, arose from his bed and allowed the defendants to gain entrance. As they entered the apartment one of the defendants went into the washroom where complainant had previously hung his pants, while the other kept complainant under surveillance.

After a short stay in the washroom one of the defendants re-emerged and both defendants then began making demands for money. Subsequent to informing defendants that the only money he had in his possession was located in the pants hanging on the bathroom door, complainant retrieved his wallet to obtain the $65 he had placed in it prior to going to bed. The wallet was found to be empty of cash. One of the defendants, apparently realizing that Mr. Kojimoto was not fluent in the English language, removed from his own pocket a dollar bill and stated:

---

[1] In its brief, the State has incorrectly attributed the sentences of 4 to 5 years to the convictions for aggravated battery causing great bodily harm, resulting in the State requesting both the vacature of convictions and the modification of sentences of the same count. A reading of the State's argument indicates that its intendment was to request a vacature of the lesser-sentenced offenses. We act accordingly.

"I want the green stuff like this." Although complainant then searched his apartment for money to give to defendants, he found none, and offered in its stead a money order. Defendants took the money order and then realizing that they would be unable to cash it without proper identification, tore it into small pieces and threw it on the floor. At this point defendants attacked complainant, repeatedly stabbing him with a knife they had brought with them and also with a steak knife they had obtained from complainant's kitchen. Finally, defendants bound complainant hand and foot and beat him to unconsciousness using a hammer and their fists. The defendants had been in the apartment for about an hour. After regaining consciousness, complainant rolled off the bed and worked his way down the hall to a neighbor's apartment, kicking the door until Albert Tillman answered.

Albert Tillman and Susan Berkery, who reside in the apartment next to Mr. Kojimoto, testified that at approximately 1:30 A.M. on the night in question, they observed defendants through the open doorway of their apartment and questioned their presence. One defendant asked him if a particular girl lived there while the other knocked at Mr. Kojimoto's door. Both witnesses then went to sleep until approximately 3 A.M. when they were awakened by Mr. Kojimoto's banging at their door with his bound feet.

At approximately 12:30 A.M. on the night in question, Richard Tobin, a pizza delivery man, was delivering a pizza to Albert Tillman's apartment. While waiting in the lobby of the apartment building for Susan Berkery to pick up the order, he noticed the two defendants. After the pizza was delivered, the defendants put a knife to this throat, and took from him $35 in bills and change. One defendant told the other to cut Mr. Tobin, but finally allowed him to leave after admonishing him "not to turn around."

On February 7, 1972, at 3:25 P.M. after Susan Berkery and Albert Tillman had made photographic identifications of Whitley and Thompson, the Chicago Police Department arrested the defendants at Leland and Winthrop Streets. A search of Whitley yielded $59, including numerous dollar bills.

Photographic and in-court identifications of the defendants were made by Mr. Kojimoto, Albert Tillman, Susan Berkery and Richard Tobin. Susan Berkery and Richard Tobin also made a lineup identification of defendants within approximately 12 hours after the incident.

Both defendants testified and denied participation in the offenses committed against Mr. Kojimoto and Mr. Tobin and further denied having been in the building on the night in question.

Defendant's initial contention is that the evidence fails to sustain a

conviction for armed robbery in that the State's case did not prove, as charged in the indictment, a taking of currency from complainant. We disagree.

■■ It is well-settled that circumstantial evidence may justify a conviction when considered with all the evidence in arriving at a verdict. (*People v. Schullo*, 360 Ill. 580, 196 N.E. 723; *People v. De Mario*, 112 Ill.App.2d 175, 251 N.E.2d 267.) The fact that the circumstantial evidence relied upon must not give rise to any reasonable hypothesis under which the defendants could be innocent of the crime charged, does not mean that the trier of fact is required to search out a series of potential explanations compatible with innocence, and elevate them to the status of reasonable doubt. *People v. Huff*, 29 Ill.2d 315, 194 N.E.2d 230.

■■ In the instant case, complainant testified that prior to the entrance by the defendants into his apartment, he had $65 in a billfold in a pair of pants hung on his washroom door. One of the defendants entered the bathroom, and after his exit, complainant discovered that the $65 was missing. No testimony was elicited offering an explanation for the disappearance of the $65. Absent a credible accounting for the missing money, the reasonable inference drawn from the above circumstances supports the jury's conclusion that the defendants had taken the money.

Defendants alternatively contend that the evidence fails to show that the taking was done with force or intimidation as required by statute. (Ill. Rev. Stat. 1971, ch. 38, pars. 18—1, 18—2.) Again, we are not so persuaded.

■■ The requirement that the taking must be "by the use of force or threatening the imminent use of force" is satisfied if the fear of the alleged victim was of such nature as in reason and common experience is likely to induce a person to part with his property for the sake of his person. (*Steward v. People*, 224 Ill. 434, 79 N.E. 636; *People v. Carpenter*, 71 Ill.App.2d 137, 217 N.E.2d 337.) The cause which gives rise to the fear must, of course, precede or be contemporaneous with the taking. (*People v. Jones*, 290 Ill. 603, 125 N.E. 256; see *People v. Chambliss*, 69 Ill.App.2d 459, 217 N.E.2d 422.) Here, defendants had already removed a portion of the door when they demanded that either complainant open the door or they would "break in." Apart from the victim's testimony that he was "scared," the fact that complainant complied with the assailants' demands is itself indicative of fear when coupled with the words used by the assailants which were obviously calculated to effect that result. Under these facts, the verbal threat made by defendants was sufficient to sustain a finding that the free exercise of complainant's will had been suspended.

Defendants next maintain that the court erred in imposing sentences for both armed robbery and aggravated battery since they arose from the same conduct. If the offenses charged resulted from the same conduct, only one sentence may be imposed. (Ill. Rev. Stat. 1971, ch. 38, par. 1—7(m); Committee Comments, S.H.A. (1972), ch. 38, par. 1—7(m).) The term "conduct" is defined as "an act or a series of acts and the accompanying mental state." (Ill. Rev. Stat. 1971, ch. 38, par. 2—4.) In resolving defendants' complaint of multiple sentences for armed robbery and aggravated battery, we are guided by the language in *People v. Ashford*, 17 Ill.App.3d 592, 308 N.E.2d 271.

"If a battery takes place in the course of a robbery the question arises whether this use of force was part of the robbery or separate from it. Often, the distinction is not easily made. If the battery immediately precedes the robbery it is normally held to be a component of the robbery (*e.g. People v. Randolph* (1972), 4 Ill.App.3d 277, 280 N.E.2d 774); if it follows the robbery it is usually regarded as a separate offense (*e.g. People v. Baker* (1969), 114 Ill.App.2d 450, 252 N.E.2d 693)." 17 Ill.App.3d at 597.

■■ Looking to the present case, we conclude that defendants' conduct constituted armed robbery and one separate and distinct offense of aggravated battery. Defendants had completed the offense of armed robbery when, armed with a dangerous weapon, they threatened the imminent use of force followed by the taking of the $65. It was only subsequent to the completion of this offense, and at a time when defendants had ascertained that complainant had no further cash on his person or in his apartment, that the merciless beating and stabbing occurred. Indeed, defendants concede that their ensuing behavior, not being contemporaneous with the taking, could not exemplify the element of force in the armed robbery charge. This subsequent use of force, being independently motivated, was accompanied by a different mental state from the initial threat of force, and consequently, did not constitute the same "conduct" within the purview of section 2—4 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 2—4).

Defendants next assign as error the admission into evidence of an unrelated crime. Specifically, they object to the testimony of Richard Tobin which revealed that the witness had been robbed at knifepoint, in the same building as the complainant, approximately an hour before the robbery of Mr. Kojimoto.

■■ The general rule is that evidence of other crimes committed by a defendant is inadmissible when independent of or disconnected from the crime with which he is charged. (*People v. Cage*, 34 Ill.2d 530, 216

N.E.2d 805.) But a corollary of the rule is that evidence, relevant to the main issue, which serves to place a defendant in proximity to the time and place, aids or establishes identity, and tends to prove design, motive or knowledge, is admissible. (*People v. Botulinski,* 392 Ill. 212, 64 N.E.2d 486.) Resolution of the conflict between the rule and corollary depends on whether the evidence of other crimes is so closely connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried. *People v. Tranowski,* 20 Ill.2d 11, 169 N.E.2d 347.

■■ The present case falls within the corollary rule. The testimony of Richard Tobin tends not only to show defendants' close proximity of time and place to the scene of the crime, but also tends to show the similarity in the perpetration of the crimes. *People v. Armstrong,* 41 Ill.2d 390, 243 N.E.2d 825; *People v. Tranowski, supra;* see also, *People v. Blakely,* 8 Ill.App.3d 78, 289 N.E.2d 273.

Defendants urge that our decision be guided by *People v. Fuerback,* 66 Ill.App.2d 452, 214 N.E.2d 330, and *People v. Butler,* 133 Ill.App.2d 299, 273 N.E.2d 37. However, both cases are distinguishable in that evidence of other crimes was introduced in rebuttal of defendant's alibi and not as direct proof to establish proximity, identity, intent, motive, or a common scheme or design. (*People v. Norfleet,* 4 Ill.App.3d 758, 281 N.E.2d 761.) In the instant case the evidence was properly admitted as a corollary to the general exclusionary rule.

■■ Defendants lastly contend that their sentences should be reduced in accordance with the provisions of the Unified Code of Corrections. (*People v. Harvey,* 53 Ill.2d 585, 294 N.E.2d 269.) Defendants were sentenced to a term of 15 to 30 years on the charge of armed robbery, Armed robbery is a Class 1 felony (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 18—2(b)) which requires a minimum term of 4 years unless the court "having regard to the nature and character of the defendant, sets a higher minimum term." (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(c)(2)). The minimum term imposed was thus allowable under the Code, and in light of the circumstances of the robbery, the severe injuries suffered by complainant, and the prior criminal records of both defendants, we decline disturbing the sentences imposed by the trial court.

We have, as previously noted, reversed the convictions for aggravated battery employing the use of a deadly weapon. The remaining sentences for aggravated battery causing great bodily harm, a Class 3 felony (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 12—4(d), must be reduced in accordance with section 5—8—1(c)(4) of the Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(c)(4)). Accordingly, the minimum term of 8 years is reduced to one-third of 10 years or 3 years and 4 months.

For the foregoing reasons the judgments of conviction and sentences for armed robbery are affirmed; the judgments for aggravated battery causing great bodily harm are affirmed with the sentences modified; and the judgments of conviction for aggravated battery employing the use of a deadly weapon are reversed.

Affirmed in part; modified in part; reversed in part.

LEIGHTON and DOWNING, JJ., concur.