THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VERDELL E. TOLES, Defendant-Appellant.

(No. 73-308;

Second District (1st Division)—August 5, 1975.

838

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

Defendant was convicted of armed robbery and attempted murder in a jury trial and was sentenced to serve two concurrent 2-10-year terms in the Illinois State Penitentiary. This is an appeal both from the original judgment and from the denial of post-conviction relief. A timely notice of appeal was filed from the original judgment order; however, it appears that no further action was taken on defendant's direct appeal until the present appeal from the denial of post-conviction relief. Since a notice of appeal was timely filed from the original judgment, we find it appropriate to presently consider both appeals.

Defendant contends that he was not proven guilty beyond a reasonable doubt; that prejudicial error occurred in the admission of hearsay testimony; that the trial court erred in giving the jury a complex reasonable doubt instruction; that the trial court should not have entered judgment and sentenced defendant for both the armed robbery and attempted murder since they arose from the same conduct; and lastly, that the trial court erred in denying defendant's petition for post-conviction relief because defendant's post-conviction hearing counsel was incompetent.

Joseph Marino, the proprietor of Joe and Mary's Liquors in South Beloit, testified that at about 7:30 p.m. on April 2, 1968, a man whom he identified as the defendant herein, entered his store and ordered a half pint of liquor. As Marino opened the cash register to give the defendant change, the defendant pulled out a gun and demanded the contents of the cash register. The defendant took $209 from the register and, while standing about 7-8 feet from Marino with his gun pointed at him, said, "Now I am going to kill you." Marino ducked down to the floor as defendant fired one shot. The shot missed and defendant ran out of the store. When Marino got up from the floor he telephoned the police, went outside and fired two shots at the fleeing defendant, both of which missed. He saw defendant run across an empty field toward Fisher Road and a parked car. Marino further testified that he had previously identified a photograph of the defendant.

At about the same time, one David L. Rickenbaugh, Jr., 14 years old, was walking on Fisher Road. As he approached the store, Rickenbaugh saw a man whom he identified as the defendant running down the hill and being followed by a car which he described as a 1959 white, two-door Chevrolet with a red stripe. Defendant came within an arm's length of him in an area well lit by the lights of a service station. Rickenbaugh heard two shots fired and saw Joe Marino with a gun. Later, Marino told Rickenbaugh that defendant had robbed his store. Rickenbaugh further testified that he had previously identified a photograph of the defendant.

James Collins testified that he saw defendant at a house in South Beloit at about 8 p.m. on the day in question. He left the house with defendant and one Terry Miner. The three went into Miner's automobile, a 1960 white two-door Chevrolet with a red stripe, and Collins began to drive. As they were riding, Collins overheard a conversation in which defendant stated that the large sum of money in his possession had come from his paycheck but Miner refused to believe that that was the case. Collins also heard defendant say, "I shot at the [expletive deleted]."

Two detectives from the Winnebago County Sheriff's Department testified that defendant gave a statement that he entered Joe and Mary's Liquors and, using a gun obtained from Terry Miner, obtained money from the man there and that on his way out of the store, he shot in the air. This statement was reduced to writing, signed by the defendant and read into evidence. The detectives also testified that they did not use coercive means to induce defendant to give the statement.

Defendant's trial defense was that he had never been at Joe and Mary's Liquors and that on the evening in question he was in Hobson's Bar in Beloit, Wisconsin. He denied that the statement admitting the robbery and bearing his signature was true. He also testified that the two

detectives had coerced him into signing a prepared statement. In addition, defendant denied that he had told Miner that he had shot at someone as Collins had testified.

Four witnesses, a barmaid and three patrons of the tavern, testified that defendant was present in Hobson's Bar on the evening in question. In substance, the testimony of these witnesses was that defendant arrived at the tavern at about 6 p.m. on the evening in question and was carried out, due to intoxication, by two of the witnesses about 9:30 p.m.

The final defense witness was the defendant's brother. He testified that he was present when James Collins admitted that the statement he had given the police concerning defendant's involvement in the robbery was false.

We first consider defendant's contention that he was not proven guilty beyond a reasonable doubt. This argument is based essentially upon defendant's view that the identification testimony of Marino and Rickenbaugh was inadequate and not worthy of belief and that it was not sufficient to rebut defendant's evidence of alibi. We disagree. First, we note that Marino's identification testimony was credible, and was based upon his observation of the defendant under circumstances as would permit positive identification to be made. Marino had the opportunity to observe the defendant at close range in a lighted liquor store while defendant walked in, ordered some liquor, demanded the contents of the cash register at gunpoint, said that he was going to kill Marino and then fired a shot at him. Marino also identified a photograph of the defendant shortly after the offense was committed. Defendant's observation that Marino failed to be more specific in his description of the robber than he was merely points to a factor which affects the weight to be accorded the witness's testimony. In commenting upon the quantum of proof required to convict a defendant where the identification of the accused is at issue, the supreme court has noted:

> "'[W]e may not substitute our judgment for that of a jury on questions involving the weight of the evidence or the credibility of the witnesses [citations], and we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt.' [Citations.] 'It is also undisputed in Illinois that where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made. [Citations.]'" *People v. Stringer* (1972), 52 Ill.2d 564, 568-69, 289 N.E.2d 631, 634.

■■  In the case at bar, in addition to the testimony of Marino, which alone would support the verdict, the State also produced the testimony of David Rickenbaugh who observed the defendant fleeing the scene of the offense and was within arm's length of him in a well lighted area. Rickenbaugh also made a photographic identification of the defendant shortly after the offense. Furthermore, the State produced the corroborating testimony of James Collins and the testimony of the two detectives who stated that defendant had admitted the robbery in question to them and had voluntarily signed a statement to that effect which was read into evidence. Despite defendant's assertion to the contrary, defendant's alibi testimony merely created an issue of fact to be determined by the jury. The evidence in the instant case was not so "unreasonable, improbable or unsatisfactory as to leave a reasonable doubt of the defendant's guilt." *People v. Scott* (1967), 38 Ill.2d 302, 306, 231 N.E.2d 441, 443.

Defendant next contends that prejudicial error resulted from the admission of hearsay testimony at trial. On redirect examination of one of the Winnebago County detectives, the prosecutor asked the witness about a statement he had taken from Terry Miner. The witness testified that Miner stated that defendant said that he had "knocked off a liquor store." Upon examination of the record herein, it appears that not only did defendant fail to interpose an objection to the testimony complained of, but that the discussion of Miner's statement was initiated by the defendant on cross-examination. On cross-examination of the detective, defense counsel asked the witness, "What did Terry Miner say about this robbery?" The witness testified that he could not recall everything that Miner said. Defense counsel then asked that Miner's statement be marked for identification. On redirect examination the State used the statement which the detective took from Miner for purposes of refreshing the witness's recollection. The detective then testified as indicated above. In our view, since the defense counsel on cross-examination asked the witness a question almost identical to that asked by the State on redirect, defendant is in no position to urge on appeal that the response to the State's question constituted error. If a party procures, invites or acquiesces in the admission of evidence he cannot complain, even though the evidence is improper. (*People v. Burage* (1961), 23 Ill.2d 280, 178 N.E.2d 389.) Furthermore, in light of the wealth of competent evidence of the defendant's guilt, we find that any error in the admission of the redirect testimony was, at most, harmless error. See *People v. Thompson* (1970), 128 Ill.App.2d 420, 263 N.E.2d 124.

■■  Next, defendant contends that the giving of a lengthy and complex reasonable-doubt instruction constituted reversible error. We deem it un-

necessary to quote the instruction in full because, in accord with our recent decision of *People v. Drumheller* (1973), 15 Ill.App.3d 413, 304 N.E.2d 455, we find that, although the use of such an instruction should be discontinued, its use will not require reversal unless the facts as to defendant's guilt are close. Since we find the evidence as to the defendant's guilt in this case is clearly not close, we also find that the giving of the reasonable-doubt instruction did not constitute reversible error.

In support of his next contention, that the court should not have entered judgment and sentenced defendant on both the attempted murder and the armed robbery because they arose from a single transaction, defendant has cited *People v. Hickman* (1973), 56 Ill.2d 175, 306 N.E.2d 32; *People v. Prim* (1972), 53 Ill.2d 62, 289 N.E.2d 601; *People v. Stewart* (1970), 45 Ill.2d 310, 259 N.E.2d 24; *People v. Gatheright* (1973), 9 Ill. App.3d 1058, 293 N.E.2d 734; and *People v. Miller* (1971), 2 Ill.App.3d 206, 276 N.E.2d 395. We find all of the cited cases to be easily distinguishable from the case before us. We find that the proper test to be employed in the factual situation before us was stated by the court in *People v. Ashford* (1974), 17 Ill.App.3d 592, 308 N.E.2d 271, in the context of an attempted armed robbery and aggravated battery, and followed by the court in *People v. Whitley* (1974), 18 Ill.App.3d 995, 311 N.E.2d 282, in the context of an armed robbery and aggravated battery. In *Ashford*, the court stated:

> "If a battery takes place in the course of a robbery the question arises whether this use of force was part of the robbery or separate from it. Often, the distinction is not easily made. If the battery immediately precedes the robbery it is normally held to be a component of the robbery (*e.g. People v. Randolph* (1972), 4 Ill. App.3d 277, 280 N.E.2d 774); if it follows the robbery it is usually regarded as a separate offense, (*e.g. People v. Baker* (1969), 114 Ill.App.2d 450, 252 N.E.2d 693)." 17 Ill.App.3d 592, 597, 308 N.E. 2d 271, 275.

■■ Applying this test, the court in *Ashford* found that since the defendant therein was demanding the victim's money *as* he hit him with a board and since neither offense was completed before the other, only the sentence for the attempted armed robbery could stand. Applying the same test in *Whitley*, the court found that since the defendants beat and stabbed the victim *after* an armed robbery had been completed, two separate and distinct offenses had been committed for which separate convictions and sentences could be imposed. Likewise, in the cases cited by the defendant, the courts found the imposition of separate sentences improper where the attack directed against the person either *preceded* the taking of the victim's property (*Miller*) or where the attack directed

against the person was *contemporaneous with* the demand for or the taking of the victim's property (*Prim, Hickman, Stewart* and *Gatheright*). In the instant case, it is clear that the attempted murder occurred *subsequent to* the completed act of armed robbery. The conduct which formed the basis for the attempted murder, the shooting, was clearly separable and independently motivated from the conduct which formed the basis for the armed robbery. In such a case, the imposition of separate judgments of conviction and sentences for armed robbery and attempted murder was proper.

Finally, defendant asserts that he was denied the effective assistance of counsel in the post-conviction proceedings as required by *People v. Slaughter* (1968), 39 Ill.2d 278, 235 N.E.2d 566, and Supreme Court Rule 651(c) (Ill. Rev. Stat. 1973, ch. 110A, § 651(c)). This contention is based upon the following colloquy which occurred at the conclusion of the post-conviction hearing between the assistant State's Attorney, Mr. Gemignani, and appointed counsel, Mr. Dean:

"Mr. Gemignani: Mr. Dean, you have examined the Report of Proceedings and the common law record, have you not?

Mr. Dean: No. All the pertinent parts.

Mr. Gemignani: All the pertinent parts?

Mr. Dean: Yes."

Defendant contends that this "partial perusal" of the record does not fulfill the obligation imposed upon counsel. Defendant goes on to argue that his appointed post-conviction hearing counsel's conduct prejudiced him in that defendant lost the opportunity to present the possible issue of improper photographic identification.

■■ We recognize that Supreme Court Rule 651(c) and *People v. Slaughter* impose certain duties upon appointed counsel in post-conviction proceedings. We would not condone nor would we seek to encourage only a partial perusal of the record by appointed post-conviction hearing counsel. We find, however, that appointed counsel in the instant case did more than merely peruse the record and that his conduct complied with the requirements of *Slaughter* and Supreme Court Rule 651(c). The record in this case affirmatively shows that appointed counsel requested time to examine the record, examined all pertinent portion thereof, conferred with the defendant and amended defendant's pro se petition to include a speedy-trial issue, an identification issue, a confession issue and a right-to-appeal issue. In the instant case, especially in view of the clear opportunity for the proprietor of the liquor store to view the robber, defendant cannot be heard to complain that appointed counsel was incompetent for failure to raise the question of whether the photographic identification of the defendant was impermissibly suggestive. The effec-

tive assistance of counsel does not contemplate the fabrication of issues nor does it require the raising of frivolous issues. Defendant received the effective assistance of counsel in his post-conviction proceedings.

For the foregoing reasons the judgments of the trial court, both in the original proceedings and in the denial of the post-conviction relief, are hereby affirmed.

Affirmed.

SEIDENFELD, P. J., and HALLETT, J., concur.