THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN B. ARMAN, Defendant-Appellant.

First District (3rd Division)   No. 1—87—2705

Opinion filed April 10, 1991.—Rehearing denied July 11, 1991.

Julius Lucius Echeles and Jeffrey Urdanger, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Inge Fryklund and Maureen A. Harton, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

A jury in the circuit court of Cook County found defendant, John B. Arman, guilty of narcotics racketeering. (Ill. Rev. Stat. 1983, ch. 56½, par. 1654(a).) In connection with sentencing, the State then filed a petition for forfeiture of certain real property and bank accounts of defendant. Following a hearing, the court entered a forfeiture order. Defendant appeals from that order. We affirm.

Defendant's underlying criminal conviction was the subject of an earlier appeal, in which our reversal of his conviction was itself reversed by the supreme court. The facts of the offense were set forth in the opinions filed in that cause. *People v. Arman* (1988), 171 Ill. App. 3d 232, 524 N.E.2d 1195, *rev'd* (1989), 131 Ill. 2d 115, 545 N.E.2d 658.

Pursuant to section 5 of the Narcotics Profit Forfeiture Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1655) (the Act), the State's petition sought forfeiture of a parcel of real estate at 1831 North Kimball Avenue, in Chicago; the proceeds from sale of another parcel at 1846 North Spaulding Avenue, in Chicago; and three savings accounts and one checking account at the Banco Popular de Puerto Rico, in Chicago. The petition alleged that defendant had acquired an interest in or had maintained the real estate and bank accounts with profits and proceeds of narcotics racketeering.

The court denied defendant's motion *in limine*, which would have required the State to limit its proof of financial activity, for purposes of forfeiture, to dates falling within the time period of the racketeering activity charged in defendant's underlying indictment. The court also denied defendant's motions for dismissal and for summary judgment. Sitting without a jury, the court then found that the State had proved by a preponderance of the evidence that funds gained through narcotics racketeering were used to maintain the buildings in question and that such funds also "went through and became" savings and checking accounts of defendant. Accordingly, the court entered an order forfeiting the remaining Kimball Avenue real estate as well as one savings and one checking account. The court also denied defendant's

motion for a hearing to determine how much of the property was actually acquired or maintained by narcotics racketeering.

## I

Defendant's first contention is that his constitutional right to a jury trial was denied when the court conducted the forfeiture hearing without a jury.

Defendant begins by arguing that the forfeiture proceeding was "so akin to a criminal proceeding" that it was subject to the Illinois Constitution's guaranty of a jury trial in criminal cases. (Ill. Const. 1970, art. I, §8.) He bases this argument on the fact that the Act's forfeiture provisions were included in a statutory section setting forth three consequences of committing the offense of narcotics racketeering. Besides forfeiture, the other two consequences were guilt of a Class I felony and liability to a fine of as much as $250,000. Ill. Rev. Stat. 1985, ch. 56½, pars. 1655(a)(3), (b).

Defendant continues by arguing that the Act's forfeiture provisions were subject to the Illinois Constitution's more general guaranty of the "right of trial by jury as heretofore enjoyed" (Ill. Const. 1970, art. I, §13). Defendant says that, even though the general jury-trial right protected by section 13 has been held not to apply in statutory actions of a type that were unknown to the common law, it would be unconstitutional to apply such a "restrictive" view of the section 13 right to the present action.

We note that, since defendant's forfeiture hearing, section 5(b) of the Act has been amended to provide for conducting forfeiture hearings at any time after filing of an information or return of an indictment, rather than only at any time following sentencing. Correspondingly, the term "sentencing court" has been replaced by the mere term "court" in section 5(a)(3) of the Act. Pub. Act No. 86—350, eff. Jan. 1, 1990 (amending Ill. Rev. Stat. 1987, ch. 56½, par. 1655).

The parties dispute whether defendant waived his claim by agreeing at the hearing that the Act precluded a jury trial of the forfeiture matter. It is also unclear whether the Act's language actually precluded a jury trial of the matter. However, our decision does not require us to resolve either the waiver or the statutory-interpretation issue. Our reason is that, even if we assume that defendant preserved his claim and that the Act did deny a jury trial of forfeiture proceedings, the Act did not violate the Illinois Constitution in doing so.

Forfeiture statutes such as our act represent an attempt to cope with the phenomenon of continuing, influential, and highly profitable criminal enterprises that transcend isolated acts of criminality. (See,

*e.g., United States v. Sandini* (3d Cir. 1987), 816 F.2d 869, 871-72; Smith, *The Scope of Real Property Forfeiture for Drug-Related Crimes under the Comprehensive Forfeiture Act*, 137 U. Pa. L. Rev. 303, 313-17 (1988); Note, *A Proposal To Reform Criminal Forfeiture Under RICO and CCE*, 97 Harv. L. Rev. 1929, 1929-30 (1984); see generally 37 C.J.S. *Forfeitures* §§1 through 6 (1943).) In part, the legislative effort requires integrating an ancient legal concept—forfeiture—with a more modern system of constitutional law.

■ The Act makes forfeiture one of the penalties for committing the Class I felony of narcotics racketeering. (Ill. Rev. Stat. 1989, ch. 56½, par. 1655; *cf. Sandini*, 816 F.2d at 875 (under Federal statute, forfeiture is penalty, not element of crime); Weiner, *Crime Must Not Pay: RICO Criminal Forfeiture in Perspective*, 1 N. Ill. U.L. Rev. 225, 232 n.30 (1981) (RICO forfeiture is *in personam* and punishment for crime).) Under the Act as it read in defendant's case, forfeiture might be ordered only after conviction. The forfeiture proceeding was thus part of sentencing, not part of trial. The conviction, not the forfeiture, was what determined felonious guilt. Consequently, it was during the conviction, not the forfeiture, stage of proceedings under the Act that defendant was entitled to a jury under the Illinois Constitution's guaranty of that right in criminal cases (Ill. Const. 1970, art. I, §8).

■ As a post-conviction penalty, forfeiture under the Act no more involves a section 8 right of jury trial than does any other criminal sentence. A defendant is constitutionally entitled to have a jury determine guilt or innocence, but not to have it decide the penalty. See *People v. Erickson* (1987), 117 Ill. 2d 271, 289, 513 N.E.2d 367, 374; *cf. McMillan v. Pennsylvania* (1986), 477 U.S. 79, 93, 91 L. Ed. 2d 67, 81, 106 S. Ct. 2411, 2420 (sixth amendment does not guarantee jury trial at sentencing); *Spaziano v. Florida* (1984), 468 U.S. 447, 464, 82 L. Ed. 2d 340, 355, 104 S. Ct. 3154, 3164 (same); *People v. Heise* (1913), 257 Ill. 443, 449-50, 100 N.E. 1000, 1002 (Ill. Const. 1870, art. II, §5 (did not guarantee jury trial at sentencing); *People ex rel. Bradley v. Illinois State Reformatory* (1894), 148 Ill. 413, 422, 36 N.E. 76, 79 (same); *People v. Koning* (1958), 18 Ill. App. 2d 119, 126, 151 N.E.2d 103, 106 (same).

■ Defendant's claim under section 13 of article I of the Illinois Constitution likewise fails for the simple reason that, when the 1818 Illinois Constitution was adopted, there was no common law right to have a jury decide punishment after a criminal conviction. Thus, no such right was constitutionally preserved. Illinois cases have consistently held that the section 13 jury-trial right applies only to proceed-

ings of a type in which such trial was known to the common law. (*E.g., Seifert v. Standard Paving Co.* (1976), 64 Ill. 2d 109, 120, 355 N.E.2d 537, 541; *People ex rel. Keith v. Keith* (1967), 38 Ill. 2d 405, 407-08, 231 N.E.2d 387, 388-89; *Ward v. Farwell* (1881), 97 Ill. 593, 612, 614-15; *Puglisi v. Hansford* (1990), 193 Ill. App. 3d 803, 807, 550 N.E.2d 618, 620.) Criminal sentencing proceedings are not of such a type. But *cf. State v. Fossett* (Del. Super. 1957), 134 A.2d 272, 276 (due process and common law require jury trial in same criminal proceeding of civil forfeiture sought regarding property said to be used unlawfully); accord *State v. Rossitto* (Del. 1974), 331 A.2d 385, 388.

Defendant has cited no authority to the contrary. His citation of *In re Fifty-three Thousand Two Hundred and Sixty-three Dollars* (1987), 159 Ill. App. 3d 114, 512 N.E.2d 740, is not helpful; the right to a jury was not at issue in that case, in which a forfeiture was ordered by the trial judge alone.

Accordingly, even if the Act did forbid a jury trial in his forfeiture proceeding, defendant's constitutional claim of right to a jury is unavailing.

II

Defendant's second contention is that, in requiring that the forfeitability of his property be proved by a mere preponderance of the evidence rather than requiring proof beyond a reasonable doubt, the Act violates his right to due process of law. Presumably, defendant invokes State as well as Federal constitutional law in this respect. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §2.

■ A Federal court construing a comparable Federal drug forfeiture statute (21 U.S.C. §848 (1982)) employed language that is pertinent here:

"[F]orfeiture is punishment for the crime. Forfeiture is not an element of the continuing [criminal] enterprise offense, but simply an additional penalty for that proscribed conduct. [Citation.]

The argument that forfeiture is an element which must be proved beyond a reasonable doubt confuses culpability with consequences. *** The statute, in effect, characterizes forfeiture as punishment for the crime and not part of the offense itself."

*United States v. Sandini* (3d Cir. 1987), 816 F.2d 869, 875. Accord *United States v. Hernandez-Escarsega* (9th Cir. 1989), 886 F.2d 1560, 1576-77.

The Federal constitutional requirement of proof beyond a reasonable doubt applies only to the guilt phase of a criminal trial, not to the sentencing phase. (*McMillan v. Pennsylvania* (1986), 477 U.S. 79,

91-93, 91 L. Ed. 2d 67, 80-81, 106 S. Ct. 2411, 2419-20.) Defendant has not shown that the Illinois Constitution dictates a different rule. His citation of *In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068, is unavailing; there, the Supreme Court demanded proof beyond a reasonable doubt in the adjudicatory stage of proceedings but not in the dispositional stage. *Winship*, 397 U.S. at 359 n.1, 25 L. Ed. 2d at 372 n.1, 90 S. Ct. at 1070 n.1.

■ Accordingly, defendant's due-process claim regarding the preponderance-of-evidence standard fails.

### III

Defendant's third contention is that forfeiture of his property violates constitutional prohibitions of double jeopardy (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §2) by punishing the same conduct twice, and that it violates constitutional prohibitions of cruel and unusual punishment and disproportionate penalties (U.S. Const., amends. VIII, XIV; Ill. Const. 1970, art. I, §§10, 11).

Defendant cites *People ex rel. Maglori v. Siman* (1918), 284 Ill. 28, 119 N.E. 940, in support of his double-jeopardy contention. In that case, the supreme court discharged a *habeas corpus* relator from imprisonment, on the ground that the trial court had exceeded its authority in sentencing the relator to both a fine and a jail term when the statute that he had violated called for a penalty of only a fine *or* a jail term and he had paid the fine. (*Maglori*, 284 Ill. at 32, 119 N.E. at 942.) Here, by contrast, the statute that defendant violated called for him to be subject to a fine *and* to be subject to forfeiture. (Ill. Rev. Stat. 1985, ch. 56½, par. 1655(a).) Thus, *Maglori* is inapposite.

Defendant also cites *People v. Ashford* (1974), 17 Ill. App. 3d 592, 308 N.E.2d 271, but just as unsuccessfully. *Ashford* held that, where battery was intertwined with robbery so as to form the same conduct, a separate sentence on each charge was improper. (17 Ill. App. 3d at 597, 308 N.E.2d at 276.) Here, however, defendant was charged with but a single offense—narcotics racketeering.

■ The forfeiture was a component of defendant's penalty, imposed after conviction in accordance with law. There was no retrial of defendant on the underlying criminal charge during the forfeiture proceedings; instead, forfeiture was part of a sentence based on his already determined guilt of narcotics racketeering. He was not twice put in jeopardy on the same charge. Hence, his Federal and State double-jeopardy contentions fail. This is especially true since, even if he had been subjected to both criminal prosecution and a separate civil forfeiture suit, double jeopardy apparently would not have at-

tached. See *People v. Khan* (1985), 136 Ill. App. 3d 754, 760, 483 N.E.2d 1030, 1035 (double-jeopardy clause does not bar institution of both civil and criminal proceedings); 36 Am. Jur. 2d *Forfeitures & Penalties* §35 (1968) (prior criminal conviction does not bar later civil forfeiture proceeding); Annot., 27 A.L.R.2d 1137 (1953) (same).

As for his contentions of cruelty and disproportionality, defendant has not shown that forfeiture was disproportionate to his offense's magnitude. Indeed, because he cites no relevant authority except the bare constitutional provisions and because he makes no separate argument regarding disproportionality or cruelty, it is apparent that his contentions of cruel and unusual punishment and of disproportionate penalty are based solely on his meritless double-jeopardy contention.

█ In any event, by statutory definition a forfeiture would affect only such property as was acquired or maintained from narcotics racketeering. (Ill. Rev. Stat. 1985, ch. 56½, par. 1655(a)(3).) Such a statutory formulation assured sufficient proportionality. In addition, the record reveals that the trial court considered whether particular property had been illegally acquired or maintained before deciding whether it was subject to forfeiture; not all of the property that the State sought was ultimately forfeited.

Section 8 of the Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1658) states the legislative intent that it be construed in accordance with similar provisions of title IX of the Organized Crime Control Act of 1970, as amended (18 U.S.C. §1961 *et seq.* (1988)). Because of its built-in proportionality, the forfeiture provision of the Federal act has been held not to violate the eighth amendment's prohibition of cruel and unusual punishment. (*United States v. Huber* (2d Cir. 1979), 603 F.2d 387, 397.) We reach a similar conclusion under both Federal and State constitutions with regard to the forfeiture provision as applied to defendant under our Act.

Accordingly, the forfeiture of defendant's property was not a cruel and unusual or a disproportionate penalty.

## IV

Defendant's fourth contention is that the trial court violated his right to due process of law by denying his motion *in limine*. That motion sought to restrict the State's forfeiture evidence to financial activity that occurred within the four-month time period framed by defendant's underlying narcotics racketeering indictment.

Except for claiming due-process rights, defendant offers no legal authority for his contention. He relies simply on the argument that, because the indictment charged racketeering between March 19, 1984,

and July 19, 1984, the State's evidence regarding acquisition or maintenance of property as a result of such racketeering should pertain to financial transactions within that period only.

■ Logically, in order to tell whether property maintained during a four-month period was maintained as a result of racketeering committed during that period, one may well need to know at least two things: (1) whether a defendant had legitimate income during that period from which to maintain the property without using racketeering-derived funds; and (2) whether, at the beginning of that period, the defendant had resources legitimately acquired that could be drawn upon to cover maintenance expenses during the four-month period. Obviously, for example, if a defendant had inherited a large sum of money prior to the four-month period, that sum might cover property maintenance expenses during the four months; in that event, the State might have considerably more difficulty in making a forfeiture case than if no such inheritance had been available to cover the expenses. Therefore, evidence of defendant's assets and income for a period prior to the four months of adjudicated racketeering was relevant and material to determining the forfeiture issue.

With equal logic, in order to establish what property was maintained with racketeering-derived funds, one cannot end the inquiry on the last date of adjudicated racketeering. The unlawfully derived funds would not necessarily disappear on that date; rather, they would in all likelihood still be available for use on some later dates to acquire or maintain property. Therefore, evidence of financial activities after the four-month period was also relevant and material to determining the forfeiture issue.

After receiving evidence of defendant's resources at the beginning of his period of racketeering, the trial court considered whether defendant's legitimate income during that period "and a reasonable time after that" could have accounted for his concurrent expenses, including property maintenance expenses. The court answered no and entered a forfeiture order. The court properly focused on the four-month racketeering period; but, without evidence of income, resources, and expenses outside the period, it would be difficult if not impossible to reach a conclusion regarding the four-month period itself. Besides, in announcing judgment, the trial judge stated that he had not considered any evidence of income and expenses that substantially predated the four-month period.

■ Defendant contends—again without citing authority other than constitutional due-process provisions—that, even if the evidence to which he objects was relevant and material, its admission still vio-

lated his due-process rights. He argues that the indictment and the forfeiture petition gave him no notice regarding any period other than the four months in question. But we know of no due-process principle, and defendant has cited none, that would limit criminal *evidence* (as distinguished from indictment or conviction) to facts or events that took place or existed solely at the time of the crime with which a defendant is charged. Instead, as long as the evidence is otherwise admissible, it can and often will pertain to prior and subsequent matters (for example, a defendant's prior knowledge, a distinctive pattern of previous crime, the history of the victim or of relations between victim and defendant, a defendant's flight, the criminal effects on a victim). Introduction of such evidence during criminal trials is commonplace—and the present defendant complains not even of evidence at trial but of evidence at a sentencing stage, where proof of prior and subsequent facts (such as a defendant's remorse or deprived background) is at least as common. Defendant makes no persuasive due-process claim by asserting that the indictment and petition gave him no notice that relevant and material evidence linked partly to dates outside his four months of racketeering might be adduced.

Accordingly, the trial court did not err in admitting evidence of defendant's financial transactions outside the four-month indictment period, and defendant was not thereby deprived of due process of law.

## V

■■ Defendant's fifth contention is that the trial court erred in denying his motion for summary judgment. Regardless of his motion's merits or lack thereof, the order of denial was not an appealable order; it was interlocutory, and it merged with the judgment that the court entered against defendant after a full hearing. (*Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 494, 505 N.E.2d 314, 320; *People v. Strasbaugh* (1990), 194 Ill. App. 3d 1012, 1016-17, 551 N.E.2d 1095, 1098; *Lambert v. City of Lake Forest* (1989), 186 Ill. App. 3d 937, 940, 542 N.E.2d 1216, 1218, *appeal allowed* (1989), 128 Ill. 2d 664.) Thus, we need not review the trial court's denial of defendant's motion.

## VI

Defendant's sixth contention is that the State failed to prove by a preponderance of the evidence that his forfeited property interests were acquired or maintained as a result of narcotics racketeering.

The trial court found from the evidence that defendant had not been lawfully employed since August 1982, yet had made cash de-

posits into bank accounts of more than $102,000 from October 1982 to September 1984 (of which more than $46,000 was deposited since March 1984). After giving defendant the benefit of several computational and evidentiary doubts, and before deducting numerous probable maintenance expenses, the trial court found that the residential properties could have yielded a maximum net income of slightly more than $5,000 from January to September 1984. Yet, into one bank account alone, defendant had made cash deposits of more than $23,000 and deposits by check of about $3,000 during that period. He had withdrawn from that account more than $14,000 (some of it being applied to property maintenance expenses) in the same period. Another account saw cash deposits of more than $9,000 and deposits by check of more than $3,000 during the same period, as well as more than $8,500 in cash withdrawals.

■■■ ■ In short, the trial court balanced a maximum of $5,000 in legitimate income against $53,000 of deposits in defendant's Chicago bank accounts alone from January to September 1984, concluding that defendant could scarcely have maintained himself and his family on the $5,000, to say nothing of maintaining his real estate. The trial court was not bound to assume that any unlawfully earned funds were applied solely to personal and not to property maintenance. In largely conclusional fashion, defendant argues that the evidence demonstrates that he acquired and maintained the residential properties from legitimate funds. Yet he makes no argument that he and his dependents supported themselves in the meantime wholly from illegitimate funds. Even if he did so argue, he would not necessarily show that the paltry documentable property income was enough to cover the property expenses. Furthermore, the trial court found numerous reasons to doubt the accuracy of the figures proffered by defendant as legitimate items of income.

A reviewing court may not reweigh the evidence or substitute its judgment for that of the trier of fact, and the trial court's findings of fact are entitled to deference, especially those involving determinations of credibility. (*Zaderaka v. Illinois Human Rights Comm'n* (1989), 131 Ill. 2d 172, 180, 545 N.E.2d 684, 688.) After a careful review of the record, we conclude that the trial court's judgment was not against the manifest weight of the evidence.

## VII

Appended to defendant's reply brief is his motion for a judgment of reversal based on this court's reversal of his underlying conviction of narcotics racketeering. (*People v. Arman* (1988), 171 Ill. App. 3d

232, 524 N.E.2d 1195, *rev'd* (1989), 131 Ill. 2d 115, 545 N.E.2d 658.) Our opinion in that cause was filed while defendant's present appeal of the forfeiture order was pending. However, because of the supreme court's later disposition of our judgment, defendant's motion is denied. The circuit court's judgment is affirmed.

Affirmed.

CERDA, P.J., and RIZZI, J., concur.